COMMONWEALTH vs. RONALD A. RUSSIN.

Worcester. November 9, 1994. - May 9, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, New trial, Plea, Defendant's competency.

Evidence presented at a hearing on a criminal defendant's motion for a mistrial, including the defendant's psychiatric and hospital reports, together with the evidence presented a day later during plea colloquies warranted the judge's conclusion that the defendant was competent when he offered pleas of guilty to murder in the first degree and rape. [316-317]

The record of plea colloquies warranted the judge's finding that the defendant offered pleas of guilty to murder in the first degree and rape intelligently and voluntarily. [317-318]

There was no error in a judge's denial of a criminal defendant's motion to withdraw guilty pleas and for a new trial. [318]

INDICTMENTS found and returned in the Superior Court Department on October 5, 1979, and October 17, 1979, respectively.

A motion to withdraw guilty pleas and for a new trial, filed on March 21, 1992, was heard by *Robert V. Mulkern,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Erica M. Foster* for the defendant.

*Matthew J. Mullaney,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. On February 12, 1980, after five days of trial, the defendant pleaded guilty to murder in the first degree and forcible rape of a child under sixteen years. The trial judge sentenced him to life imprisonment without parole at the Massachusetts Correctional Institution (M.C.I.) at Walpole on the conviction of murder in the first degree and,

after an examination pursuant to G. L. c. 123A, § 4, as amended by St. 1974, c. 324, § 1, to a period of from one day to life at the treatment center for the sexually dangerous at M.C.I., Bridgewater, on the rape of a child conviction.

On March 21, 1992, the defendant filed a motion to withdraw his guilty pleas and for a new trial on both indictments. The same judge that had presided over the trial and accepted the pleas of guilty approximately twelve years earlier conducted a hearing on the motion. The defendant submitted three affidavits for the judge's consideration. There was no further evidence. After hearing counsel's arguments, the judge issued a memorandum of decision and denied the defendant's motion. This is the defendant's appeal from that ruling.

Shortly after the defendant was indicted in October, 1979, for these two crimes and pleaded not guilty, he was committed to Bridgewater State Hospital for observation and a report pursuant to G. L. c. 123, § 15 (b), as amended by St. 1973, c. 569, § 6. The examining physician thereafter filed a report in the Superior Court as required by G. L. c. 123, § 15 (c), as appearing in St. 1971, c. 760, § 13. The report stated that the defendant was competent to stand trial.

Trial commenced on February 4, 1980. We summarize the relevant trial evidence. In 1979, the defendant lived with his girl friend and his girl friend's twelve year old daughter (victim). On October 3, 1979, at approximately 6:30 A.M., the defendant drove his girl friend to work. He returned to his home around 7:15 A.M. and a friend arrived shortly thereafter. While the victim was making breakfast, the defendant and his friend began "fooling around" with the victim. The defendant told the victim, "I'm going to get you," and he struck her with a knife inflicting two stab wounds in her neck plus a wound which the pathologist who conducted the autopsy described as a "wide slash wound." The defendant and his friend put the victim on a bed and the defendant had intercourse with her. The pathologist testified that the victim

was alive when she was vaginally penetrated and that she died as a result of a severed carotid artery.

On February 11, after several days of trial, the judge learned that, in the early hours of that day, while the defendant was incarcerated at the Worcester County house of correction, he cut his forearms several times with a razor and claimed that he had swallowed between forty-five and fifty Tylenol pills in an alleged suicide attempt. The defendant was treated at Worcester City Hospital and was released. Defense counsel moved for a mistrial, asserting that the defendant was incompetent to proceed with the trial. The judge ordered a mental examination of the defendant pursuant to G. L. c. 123, § 15 (*a*), as amended by St. 1971, c. 760, § 12, and a prompt one-half hour examination was conducted by a board-certified psychiatrist. The psychiatrist reviewed the house of correction report regarding the defendant's alleged suicide attempt as well as earlier reports about the defendant from doctors at Bridgewater State Hospital. The psychiatrist then filed his report with the court. Subsequently, the judge held a competency hearing and the psychiatrist read his report into the record. In response to defense counsel's questions, the psychiatrist testified that the defendant was not suicidal, that the self-inflicted wounds were designed to attract the attention of the jail guard, and that the psychiatrist had no reservation about the quality of the defendant's judgment.

Worcester City Hospital medical and laboratory reports were placed in evidence. They indicated that the cuts on the defendant's arms were superficial and that, although the defendant was induced to vomit twice, there was no evidence of his having ingested pills as he claimed he had done.

Defense counsel argued to the judge that the defendant could not meaningfully assist with his defense because he was overcome with fear of facing "summary justice at the hands of fellow inmates" if he was sentenced to M.C.I., Walpole. At the conclusion of the hearing, the judge denied the defendant's motion for a mistrial, finding that the defendant "ha[d] the present ability to consult with his lawyer with a reasonable degree of rational understanding[,] . . . [t]hat he

[understood] the nature of the offenses alleged, and that he [was] competent to continue the trial."

On the following morning, February 12, 1980, counsel informed the judge that his client wished to plead guilty to the indictments. Lengthy colloquies between the judge and the defendant and between defense counsel and the defendant followed. At the outset, the judge inquired of counsel whether there were any material agreements between the Commonwealth and the defendant. Defense counsel replied that "obviously the defendant is aware that the court has no alternative on the sentence on the first-degree murder indictment. As to the indictment presenting rape, the Commonwealth and the defense have agreed that it is contingent upon your honor in the first instance committing the defendant without sentence to Bridgewater for a period of [sixty] days observation to determine whether he is a sexually dangerous person, and that the defendant will then be returned here for sentencing on the strength of that report. That is the only agreement." In response to the judge's inquiry, the prosecutor confirmed that the parties' agreement had been correctly described by defense counsel.

The judge then turned his attention to the defendant, explaining to him the elements of the crimes charged as well as informing him of the mandatory sentence of imprisonment for life without parole on the murder indictment and the maximum sentence for rape of a child under sixteen years. The judge explained that, following a commitment to the State Hospital at Bridgewater, in keeping with the aforesaid agreement, "a hearing may be held to determine whether . . . you are or are not a sexually dangerous person. In the event the court determines after hearing that you are a sexually dangerous person, the court may then order that you be committed to the center for the sexually dangerous at Bridgewater for a period of from one day to life. In the event the court determines that you are not a sexually dangerous person, the court may impose any sentence provided by law for . . . the offense of rape of a child. Now, the maximum sentence on that offense is life imprisonment at Walpole.

And I tell you now that the court is empowered, it has the power to impose such a sentence consecutively upon the sentence that you would receive today, life imprisonment on the murder. You understand that?" The defendant answered that he understood. Also at numerous other junctures during the colloquy, the defendant told the judge that he understood what the judge was telling him.

In addition, defense counsel examined the defendant at length to establish that the defendant's pleas of guilty were knowingly and willingly offered. The defendant testified that he left school after the fifth grade, that, at the time of his testimony, he did not read, spell, or write well, but that he had no trouble in speaking or understanding English "the way that [counsel was] talking to [him]." The defendant testified that he had been hospitalized for alcoholism about a year and a half before the trial, that he used alcohol and drugs, but that he had not done so for about five months before giving his testimony, during which period he had been at the house of correction. We set forth a representative sample of the remaining colloquy as follows:

   Q.: "And you know the things that the witnesses have been saying from the witness stand, including statements that you made to the police, indicate that you killed [the victim] with a knife?"
   A.: "Yes."
   Q.: "And that at or about the time that you killed her with the knife you had sex with her, and that that essentially was forced and against her will?"
   A.: "Yes."
   Q.: "You understand that?"
   A.: "Yes."
   Q.: "That's the proof?"
   A.: "Yes."
   Q.: "That's what you heard; am I right?"
   A.: "Yes."
   Q.: "Okay. And do you admit that those are the things that you did?"

*A.*: "Yes."

*Q.*: "Now, do you understand that you are pleading guilty to those things?"

*A.*: "Yes, I do."

*Q.*: "Is that something that you want to do?"

*A.*: "Yes."

" . . .

*Q.*: "Are you confused in any way by — do you not understand any of the questions that I have been asking you, . . .?"

*A.*: "No."

*Q.*: "You understand what I am asking you?"

*A.*: "Yes."

*Q.*: "Okay. Do you feel that in the conduct of the trial, the preparing for the trial, that I have acted or that I am acting now in your best interest?"

*A.*: "Yes."

*Q.*: "Are you satisfied with what I have done in representing you as your lawyer?"

*A.*: "Yes."

*Q.*: "Now, has anyone, I include myself or anyone from the district attorney's office, any court personnel, has anyone threatened, promised you anything or made any offers to you in any way to plead guilty besides the recommendation that [the prosecutor] is going to make?"

*A.*: "No."

In response to further questioning by the judge, the defendant testified that he was not confused by the judge's or the attorney's questions. The judge then asked him, "May I then understand, sir, that you are pleading guilty for but one reason and one reason only, and that is because you are guilty; is that right?" The defendant answered, "Yes, sir." When asked, "There is no question about that at all?," the defendant answered, "No, sir."

The judge accepted the defendant's guilty pleas and committed him to the treatment center for not more than sixty

days of observation. The center reported to the court that the defendant was "a sexually dangerous person" and the defendant has served his sentence at the center.

On November 17, 1989, the defendant filed a pro se motion for a new trial, seeking to have his guilty pleas vacated. "A motion for new trial is the appropriate device for attacking the validity of a guilty plea." *Commonwealth* v. *Fernandes*, 390 Mass. 714, 715 (1984), quoting *Commonwealth* v. *Huot*, 380 Mass. 403, 406 (1980). No action was taken on that motion. A second motion for a new trial was filed on the defendant's behalf by counsel on March 21, 1992, and a hearing was held by the trial judge in August of that year, approximately twelve years after the convictions. Three affidavits of the defendant were submitted to the judge in support of the motion. No other evidence was offered. The affidavits detailed the defendant's dysfunctional family background, his limited education, his history of substance abuse, his alleged suicide attempt, and the circumstances surrounding his having pleaded guilty to murder in the first degree and forcible rape of a child under sixteen years. The defendant claimed that his pleas were not knowing and voluntary; that he did not understand the consequences of his pleading guilty.

The judge denied the defendant's motion. In his memorandum of decision, the judge stated that he recalled the case, that the evidence against the defendant was "very strong," the "crime was horrendous," and "the 'suicide attempt' was for whatever reason, staged." The judge's memorandum states, "I recall the defendant at the plea proceeding. He was well controlled, he was responsive and articulate. He possessed all his mental and physical faculties. He knew what he was doing and was doing what he wanted to do." The judge noted that both he and defense counsel recognized that the defendant's plea to murder in the first degree was unusual and for that reason the colloquy was "perhaps more painstaking than might be expected in a more routine plea procedure." Denying the defendant's motion to withdraw his guilty pleas and for a new trial, the judge concluded that

"the constitutional requirements [were] satisfied and . . . the pleas of guilty were freely, willingly and voluntarily made." The judge found that "the defendant was advised of and understood the elements of the crimes charged and the punishment potentials upon conviction."

The defendant contends that the judge erred. He argues that he was not competent to plead guilty to the crimes with which he was charged and that, in any event, although his pleas were not coerced, they were not offered "knowingly" and were, therefore, not voluntary. The defendant cites his limited education, difficult childhood, drug abuse, and attempted suicide the day before the pleas were offered. He argues that his plea of guilty to murder in the first degree, resulting in mandatory life imprisonment without parole, is telling evidence of his lack of understanding of the consequences of his guilty pleas, and that his attempted suicide just one day before the pleas were offered makes clear that he was not competent to offer such pleas. The defendant asserts that after the attempted suicide and before accepting his pleas of guilty the judge should have required another competency hearing in addition to the pretrial hearing. Lastly, the defendant argues that the plea colloquy was insufficient to inform him of all the implications of pleading guilty to murder in the first degree and forcible rape of a child under sixteen years.

We are not persuaded by the defendant's arguments. "[T]he test of competence to plead is similar to that for standing trial . . . for defendants at trial face decisions as difficult and complex as those involved in deciding whether to plead guilty. . . . To lay down more exacting requirements in respect to accepting a defendant's plea than in permitting a defendant to stand trial might indeed visit odd and harsh consequences upon him by forcing him to unreasonable risks of going to trial and receiving sterner punishment in the end." *Commonwealth* v. *Blackstone,* 19 Mass. App. Ct. 209, 211 (1985), quoting *Commonwealth* v. *Leate,* 367 Mass. 689, 696 (1975). See *Commonwealth* v. *Morrow,* 363 Mass. 601, 607 (1973) ("There is nothing in the record to indicate

that the defendant was incompetent to stand trial. The same standard should be applied to the acceptance of a guilty plea").

The standard for determining competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky* v. *United States*, 362 U.S. 402, 402 (1960). See *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). In determining competence, a judge may rely on the report of the psychiatrist who examined the defendant. *Commonwealth* v. *Vailes*, *supra*, citing *Commonwealth* v. *Devereaux*, 257 Mass. 391, 396-397 (1926). See *Commonwealth* v. *Kostka*, 370 Mass. 516, 522-523 (1976) (psychiatrist's testimony that defendant was competent to stand trial warranted judge's finding defendant competent). Here, the judge conducted a competency hearing, prompted by the defendant's motion for a mistrial, the day before the defendant offered his guilty pleas. The judge made a determination at that time, based on sufficient evidence, including the examining psychiatrist's report and hospital reports concerning the defendant's self-inflicted arm wounds, that the defendant "ha[d] the present ability to consult with his lawyer with a reasonable degree of rational understanding[,] . . . that he [understood] the nature of the offenses alleged, and that he [was] competent to continue the trial." The evidence presented to the judge at the hearing on the motion for a mistrial together with the evidence presented at the plea colloquies warranted the judge's conclusion of the defendant's competency when he offered the pleas. In addition, in reviewing the judge's determination of competency, we must give weight to the judge's opportunity to observe the defendant's demeanor during the trial and the plea hearing. *Commonwealth* v. *DeMinico*, 408 Mass. 230, 236 (1990). No error with respect to the judge's determinations of competency has been demonstrated.

"In establishing that a guilty plea is offered intelligently and voluntarily by the defendant, the judge must ensure that

the plea has been made with an understanding of the nature of the charge and the consequences of the plea. *Brady* v. *United States*, 397 U.S. 742, 748 [1970]. *Huot* v. *Commonwealth*, [363 Mass.] 91, 100-101 [1973]." *Commonwealth* v. *Morrow*, 363 Mass. 601, 605 (1973). These conditions must be shown on the record made at the time the judge accepts the plea, *Commonwealth* v. *Fernandes*, *supra* at 716, supplemented by the trial record. *Commonwealth* v. *Quinones*, 414 Mass. 423, 431-432 (1993). *Commonwealth* v. *Sullivan*, 385 Mass. 497, 508 (1982). The contemporaneous record here warrants the judge's finding that "the defendant was advised of and understood the elements of the crimes charged and the punishment potentials upon conviction," and the judge's ultimate conclusion that "the constitutional requirements [were] satisfied and . . . the pleas of guilty were freely, willingly and voluntarily made."

"The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). A motion for a new trial is addressed to the sound discretion of the trial judge, and the judge's disposition of the motion will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error. *Commonwealth* v. *Sullivan*, *supra* at 503. *Commonwealth* v. *Smith*, 381 Mass. 141, 142 (1980). In this case, the trial judge's denial of the defendant's motion to withdraw his guilty pleas and for a new trial is not unjust. The trial and plea proceedings were not infected with prejudicial error. Therefore, the order denying the motion is affirmed.

*So ordered.*