## COMMONWEALTH *vs.* HUNG TAN VO.

Middlesex. March 3, 1998. - May 18, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & MARSHALL, JJ.

*Practice, Criminal,* New trial, Competency to stand trial, Assistance of counsel, Instructions to jury, Presumptions and burden of proof, Capital case. *Self-Defense. Evidence,* Self-defense. *Homicide. Malice.*

In a murder case, the trial judge's finding that the defendant was competent during the trial and that he had the ability to communicate with his attorney was supported by the evidence, and the judge did not abuse his discretion in denying the defendant's motion for a new trial based on that finding. [466-469]

In a murder case in which the judge found, on the defendant's motion for a new trial, that the defendant was competent during trial, there was no substantial likelihood of a miscarriage of justice arising from defense counsel's alleged ineffective assistance in failing to have raised the issue of competence at trial. [469-470]

In a murder case in which the Commonwealth presented strong evidence that the defendant killed the victim with deliberate premeditation, defense counsel's failure to present a claim of lack of criminal responsibility did not create a substantial likelihood of a miscarriage of justice or constitute ineffective assistance of counsel. [470-471]

In a murder case, the judge's single erroneous statement regarding deliberate premeditation did not create a substantial likelihood of a miscarriage of justice where the judge gave an initial correct statement followed by a correct supplemental instruction on the point [471-473]; and there was no substantial likelihood of a miscarriage of justice created by the judge's supplemental instruction on malice [473].

INDICTMENT found and returned in the Superior Court Department on March 12, 1991.

The case was tried before *Robert H. Bohn*, J.

*Dana A. Curhan (Ralph F. Champa, Jr.,* with him) for the defendant.

*Rosemary Daly*, Assistant District Attorney, for the Commonwealth.

The defendant, pro se, submitted a brief.

LYNCH, J. A jury convicted the defendant of murder in the

first degree by reason of deliberate premeditation. On appeal, the defendant argues that (1) his motion for a new trial should have been allowed because he had become incompetent during the course of trial, and (2) defense counsel's failure to raise the question of the defendant's incompetence during trial constituted ineffective assistance of counsel. In a pro se brief the defendant argues that the judge's initial charge and supplemental instructions on malice and his supplemental instruction on deliberate premeditation[1] created a substantial likelihood of a miscarriage of justice, and defense counsel's failure to object to the instructions deprived him of effective assistance of counsel. In both briefs the defendant requests that we exercise our power under G. L. c. 278, § 33E, to reduce his murder conviction or to order a new trial.

*Facts.* The evidence in the light most favorable to the Commonwealth would permit the jury to find the following. *Commonwealth* v. *Sarourt Nom*, 426 Mass. 152, 153 (1997). On the morning of February 19, 1991, the defendant, a twenty-one year old man of Vietnamese descent,[2] shot and killed the victim by firing two shots into his head. About five days before the murder the defendant's female companion, the prosecution's primary witness, informed the defendant that the victim had raped her on several different occasions. The defendant and his female companion had been living together up until the murder. She considered the defendant to be "jealous" throughout the relationship. On one occasion about two months before the murder, she and the defendant had an argument because the defendant did not want her to work and was "afraid that someone else was going to like [her] and that [she] was going to go [out] with that person." She refused to quit her job and told the defendant she would move out of the apartment they shared. While his companion was packing her belongings, the defendant threatened to cut off his finger if she did not stop. The defendant left the room and cut off half of his fifth finger.[3]

Five days before the murder on February 14, 1991, the

---

[1]The jury received their instructions on March 11, 1992. Later that day, the jury submitted two questions. After resuming their deliberations, the jury returned a verdict of guilty the next day, March 12, 1992.

[2]The defendant had a court-appointed interpreter during trial.

[3]During the companion's testimony about this incident, defense counsel requested a brief recess because the defendant appeared to react to her testimony.

defendant asked his companion whether anyone had been "bothering" her at school. After the defendant told her that he believed he had contracted a sexually transmitted disease from her, she told the defendant that the victim had raped her on separate occasions during 1989. The defendant wanted her to notify the police about the rapes, but she refused.[4]

On February 18, 1991, the defendant and his companion drove to the victim's house. The defendant brought with him a gun and a roll of duct tape. The defendant told her that he wanted to kill the victim. The victim was not home; they returned to their apartment. The next morning, they drove to the victim's house again, but after learning he was not home, they drove to the victim's workplace. The defendant parked his automobile and placed the gun under the hood. After leaving a message for the victim to come outside, the defendant retrieved the gun from the vehicle.

The victim eventually came outside to the parking lot. The defendant's companion moved the vehicle closer to the entrance of the building. The defendant asked the victim to get into his automobile, but the victim refused. As the defendant and the victim were conversing, the defendant attempted to walk away and the victim grabbed his arm. The defendant then shot the victim in the head.

After the shooting, the defendant and his companion returned to their apartment. The defendant called the Somerville police. When the police arrived at his apartment, the defendant cooperated and confessed to having killed the victim.[5]

1. *Motion for a new trial.* In his motion for a new trial the defendant claims he became incompetent to stand trial after his companion testified. The defendant did not bring his alleged midtrial incompetency to the attention of the judge during the trial.[6]

The defendant asserts that, after his companion took the stand,

___

[4]His companion apparently told the defendant while he was being held awaiting trial that she "had lied to him about being raped and in fact had been voluntarily sleeping with [the victim]."

[5]The defendant filed a pretrial motion to suppress the confession as being in violation of the Miranda warnings. The judge, after hearing, rejected the defendant's argument that the defendant involuntarily waived his Miranda rights. This ruling is not challenged on appeal.

[6]The defendant filed a motion for required finding at the close of the Commonwealth's case. The docket indicates the motion was denied "after hear-

he lost the ability to attend to the events of the trial, to consult with his attorney, or to participate in his defense. Furthermore, he contends that his incapacity caused him to lose the opportunity to resolve his case on more favorable terms by agreeing to plead guilty to manslaughter. At the motion hearing, trial counsel for the defendant testified that, as a result of the defendant's incompetency, he had been unable to communicate with the defendant, and therefore, was unable to present an adequate defense.

The decision to allow a motion for a new trial lies within the sound discretion of the trial judge. *Commonwealth* v. *Figueroa*, 422 Mass. 72, 77 (1996). The motion judge's decision is afforded special deference if that judge was also the trial judge. *Id.*, citing *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 32-33 (1923). The judge's disposition of the new trial motion will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error. *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995). The judge did not abuse his discretion in denying the defendant's motion for a new trial, and the trial was not infected with prejudicial error.

At the hearing on the motion, the judge heard the testimony of Dr. Wesley E. Profit; Dr. Martin Kelly, an expert retained by the Commonwealth; defense counsel; the defendant's mother, father, and brother; and the prosecutor. The judge, who had been the presiding judge at trial, had the added benefit of his own observations of the defendant during trial.

The judge concluded that the defendant had been competent to stand trial after his companion's testimony.[7] The judge acknowledged that there was evidence that the defendant "became distraught and depressed" after his companion informed him that she had voluntarily engaged in sexual relations with the victim. He further noted that the defendant's depression had been "exacerbated by [his companion's] termination of her communications and visits" during trial.[8] The

---

ing." No hearing was recorded and the defendant has not appealed from the ruling.

[7]In his memorandum the judge stated: "It is important to note that [the defendant] argues he became incompetent to stand trial after hearing [his companion's] testimony on the first day of trial, and does not contest his competency prior to that point."

[8]Dr. Profit's psychiatric report indicates that the defendant's companion initially visited the defendant every day, "[t]hat is, she would come for the

judge found, however, that these events had occurred in August, 1991, several months before the testimony of the defendant's companion on March 4, 1992. From August, 1991, to March 4, 1992, the judge found the defendant had been competent to stand trial, noting that there was "no suggestion from any source that [the defendant] was unable to consult with counsel and to prepare his defense during this period."

The judge's finding that the defendant was competent after his companion testified is supported by the evidence. *Commonwealth* v. *Russin, supra* at 317, citing *Commonwealth* v. *Vailes,* 360 Mass. 522, 524 (1971). The judge took notice of the defendant's demeanor at trial and that "[t]here were no emotional outbursts, manifestations, or signs that [the defendant] did not understand the nature and object of the proceedings against him." *Commonwealth* v. *Russin, supra.* The judge also noted that the defendant's own testimony, which came five days after his companion had testified, was complete, coherent, and consistent with his prior statements to Dr. Profit months earlier. The trial transcript contains instances where the defendant addressed the prosecutor and defense counsel in a coherent and logical manner. The judge also found that the defendant was responsive to questions.[9] *Commonwealth* v. *DeMinico,* 408 Mass. 230, 236 (1990).[10] The judge did not abuse his discretion in finding the defendant competent after the testimony of his companion and that he had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understand-

morning visiting period, 9 to 11 A.M., sit in the parking lot from 11 A.M. to 1 P.M. and then return for the 1:00 to 4:00 P.M. visiting hours." The report later points out that she would "invariably" park her automobile in the hospital parking lot during the time period they were separated. During that time period, the defendant would sit only in a certain room that had a view of the parking lot.

[9]Defense counsel argued that he was unable to prepare the defendant prior to his taking the stand. He testified at the hearing on his motion for a new trial that he had tried to prepare the defendant for his testimony, but that he was "not responsive." Defense counsel stated that he tried to tell him what questions he would be asking the defendant, but the defendant responded repeatedly during the course of a forty-five minute interview that, "[he] must save face." The defendant's testimony was for the most part consistent with other facts presented at trial. The transcript, read as a whole, does not suggest that the defendant was operating under a mental impairment.

[10]The defendant's testimony was consistent with the defense strategy of self-defense. The defendant used the legal term "premeditated" during his testimony. On cross-examination the defendant gave an imprecise but meaningful definition of the terms. The following exchange took place:

ing and . . . a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *DeMinico, supra,* quoting *Commonwealth* v. *Vailes, supra.* The fact that Dr. Profit determined over fifteen months later that the defendant became incompetent during the course of the trial did not compel such a conclusion. See *Commonwealth* v. *DeMinico, supra* at 234-235 (defendant competent despite testimony that he experienced a psychotic episode during trial); *Commonwealth* v. *Kostka,* 370 Mass. 516, 522 (1976) (defendant competent despite testimony to the contrary).

2. *Ineffective assistance of counsel.* The defendant's claim of ineffective assistance of counsel was not presented to the judge at the hearing on the defendant's motion for a new trial. However, where the defendant has been convicted of murder in the first degree, we review the defendant's claims of ineffective assistance of counsel, raised in his direct appeal, under the standard of review required by G. L. c. 278, § 33E, a standard that is more favorable to a defendant than is the constitutional standard for determining ineffective assistance of counsel. *Commonwealth* v. *Mello,* 420 Mass. 375, 393 (1995), citing *Commonwealth* v. *Plant,* 417 Mass. 704, 715 (1994). Under that standard, we need not exclusively focus on the adequacy of trial counsel's performance, but rather examine "whether there was an error . . . (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion."[11] *Commonwealth* v. *Mello,* 420 Mass. 375, 393 (1995), quoting *Commonwealth* v. *Wright,* 411 Mass. 678, 682 (1992).

Because the judge's finding of competency was supported by

---

THE PROSECUTOR: "What does the term premeditated mean sir, you keep using that word?"

THE DEFENDANT: "It mean that you tried to told the jury on Wednesday."

THE PROSECUTOR: "No, what does it mean to you?"

THE DEFENDANT: "Let me look like a cold blooded human being and I know myself. I am not that kind of person."

[11]The defendant bases his claims of ineffective assistance of counsel under both State and Federal constitutional grounds. We have stated our view that, "if the [test in *Commonwealth* v. *Saferian,* 366 Mass. 89 (1974)] is met, the Federal test is necessarily met as well." *Commonwealth* v. *Mello,* 420 Mass. 375, 393 n.16 (1995), quoting *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985).

the evidence, a substantial likelihood of a miscarriage of justice does not exist concerning when and how the competency issue was raised; the ultimate outcome would have been the same.

3. *Theory of the defense.* The defendant supported his self-defense theory,[12] primarily by his own testimony, that the victim had previously threatened him and had tried to run him over with his automobile; that the victim had pulled the defendant's arm when he tried to walk away[13]; and that the defendant fired the shots because he believed the victim appeared to be reaching into his pocket for a gun. The jury chose to reject this evidence in the light of the Commonwealth's evidence that the defendant killed the victim with deliberate premeditation. *Commonwealth* v. *Haggerty*, 400 Mass. 437, 441-442 (1987).

The Commonwealth's evidence tended to show, and the defendant presented no facts to the contrary, that the defendant was angry with the victim based on his belief that the victim had raped the defendant's companion; that he and his companion went looking for the victim at his house on two separate occasions while armed with a gun and duct tape; and that the defendant had fired two shots at close range, from two different angles, to the victim's head. Furthermore, the defendant had admitted the facts of the crime, the only difference being his contention that he did not intend to kill the victim. Given the Commonwealth's evidence of prior planning and the defendant's

---

[12]The defendant made no argument below and makes none on appeal based on lack of criminal responsibility. We note that, on March 18, 1991, a judge allowed defense counsel's motion for authorization to expend funds for the services of a psychiatrist. Furthermore, we point to the fact that Dr. Profit examined the defendant for criminal responsibility on October 19, 1991. He concluded that the defendant's examination "[had] not revealed evidence . . . which would suggest or tend to suggest that at the time of the incident [the defendant] was suffering from a mental disease or defect which would have rendered him lacking in the substantial capacity to distinguish right from wrong or which would have rendered him unable to conform his conduct to the requirements of the law." Accordingly, where the defendant's chances of successfully asserting a defense based on lack of criminal responsibility were slim, counsel's failure to present such a strategy would not likely support a claim that counsel deprived the defendant of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Montanez*, 410 Mass. 290, 297 (1991), quoting *Commonwealth* v. *Saferian, supra.*

[13]Testimony of the defendant's companion did support the self-defense theory that the victim pulled the defendant's arm as he attempted to walk away.

own admission that he had committed the criminal act, the self-defense theory was tenuous at best, but that is not to say, in the light of Dr. Profit's pretrial opinion and the defendant's own conduct as perceived by the judge and trial counsel, that a claim of lack of criminal responsibility or competency would have fared any better. Neither ineffectiveness nor a likelihood of a miscarriage of justice arise from counsel making the best he can out of the circumstances of the crime. *Commonwealth* v. *Harris*, 387 Mass. 758, 763 (1982).

4. *Jury instructions.* In a pro se brief the defendant also argues that the judge's supplemental instruction on deliberate premeditation created a substantial likelihood of a miscarriage of justice as did his instruction on malice. In response to a question from the jury the judge stated:

> "I'm going to read to you again, the definition of deliberate premeditation and the definition of malice.
>
> "For the Commonwealth to prove deliberate premeditation, which it must prove to you beyond a reasonable doubt in order for you to return a verdict of first degree murder, you must conclude that the defendant thought before he acted. That is, the defendant formed a plan to murder after deliberation.
>
> "The element of deliberation however, does not require an extended time span, nor does it mean that the deliberation must be accomplished slowly. Rather, it refers to the purposeful character of the premeditation.
>
> "In view of the speed with which the mind may act, the law does not attempt to set any limits as to time. Deliberation may be a matter of days, hours, or even seconds. It is not so much a matter of time as it is of logical sequence.
>
> "First the deliberation and premeditation, then the decision to kill, and lastly the killing in furtherance of the decision.
>
> "All of this may occur within a few seconds, however it *does not exclude action which is taken so quickly that there is no time to think about the action and then to determine to do it.*

"Although no particular length of time is required to prove deliberate premeditation, the Commonwealth must show that the [defendant's] resolution to kill was the product of cool reflection.

"However it does *exclude action which is taken so quickly that there is no time to think about the action and then determine to do it.*" (Emphasis added.)

The statement that deliberate premeditation "*does not exclude* action which is taken so quickly that there is no time to think about the action and then to determine to do it" is obviously incorrect. *Commonwealth* v. *Kosilek*, 423 Mass. 449, 453 (1996). The judge's initial instructions to the jury properly followed the charge approved of in *Commonwealth* v. *Callahan*, 401 Mass. 627, 633 (1988). In addition, the judge's supplemental charge included the correct statement of law that deliberate premeditation "does exclude action which is taken so quickly that there is no time to think about the action and then determine to do it." In *Commonwealth* v. *Kosilek*, *supra* at 453-454, we concluded that an identical error in a similar charge was not prejudicial in the light of the prior correct instruction and with the judge's following the error with a correct statement of the law as happened here. The error did not create a substantial likelihood of a miscarriage of justice.[14]

In his separate brief the defendant also argues that the supplemental instruction impermissibly shifted the Commonwealth's burden of proof to the defense because the judge did not repeat that it was the Commonwealth's burden to prove malice. The instructions did not explicitly state that the defendant had the burden of proving anything nor imply that such was the case by using terms such as "if you find in the defendant's favor." The defendant's argument focuses only on the judge's supplemental instructions. The charge as a whole was replete with instances where the judge properly stressed that the burden of proof for each element of the crime falls on the Commonwealth. *Commonwealth* v. *Johnson*, 422 Mass. 420, 428 (1996). There was no substantial likelihood of a miscar-

---

[14]Given that the supplemental instruction did not prejudice the defendant, we reject the defendant's argument that defense counsel's failure to object to the instruction constituted ineffective assistance of counsel.

riage of justice.[15]

5. *General Laws c. 278, § 33E.* In addition to the argument raised by the defendant, we have reviewed the entire record pursuant to G. L. c. 278, § 33E, and we conclude that a reduction in the sentence or a new trial is not appropriate.

*Judgment affirmed.*

---

[15]The defendant also challenged the judge's instruction on the third prong of malice. *Commonwealth* v. *Morgan*, 422 Mass. 373, 382 (1996). The only theory of murder in the first degree to which the third prong of malice applies is extreme atrocity or cruelty. *Commonwealth* v. *Judge*, 420 Mass. 433, 442 (1995).