NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1672                                      Appeals Court

COMMONWEALTH  vs.  HILDEBRANDO CANO.

No. 13-P-1672.

Middlesex.     October 8, 2014. - April 3, 2015.

Present:  Green, Rubin, & Agnes, JJ.

Practice, Criminal, Admission to sufficient facts to warrant
     finding, Plea, New trial, Defendant's competency, Waiver,
     Assistance of counsel. Constitutional Law, Plea,
     Assistance of counsel. Due Process of Law, Plea,
     Assistance of counsel. Waiver. Incompetent Person, Plea
     to criminal charge. Alien. Abuse Prevention. Assault and
     Battery by Means of a Dangerous Weapon.

     Complaints received and sworn to in the Lowell Division of
the District Court Department on January 8, 1988, June 22, 1992,
August 23, 1996, and June 2, 2006.

     Motions for a new trial, filed on March 7, 2013, were
considered by Neil J. Walker, J.

     Thomas Stylianos, Jr., for the defendant.
     Emily Walsh, Assistant District Attorney, for the
Commonwealth.

     GREEN, J.  The defendant appeals from orders of the

District Court, denying his motions for new trial which sought

to vacate guilty pleas[1] entered on various charges. The defendant contends that his motions raised substantial issues, warranting evidentiary hearings. Specifically, he claims that his plea counsel failed to advise him of the immigration consequences of his pleas, and that counsel's constitutionally deficient performance in that respect caused him prejudice. See Padilla v. Kentucky, 559 U.S. 356 (2010). Separately, he asserts that he lacked the mental competency required to enter each of the pleas knowingly and voluntarily. We discern no error of law or abuse of discretion in the motion judge's rejection of the latter claim, but agree that the defendant's motion directed to his 1997 guilty plea to the charge of assault by means of a dangerous weapon raised issues sufficient to warrant an evidentiary hearing. We accordingly vacate the order denying the defendant's motion for new trial on the 1997 guilty pleas only as to the charge of assault by means of a dangerous weapon and remand the matter for further proceedings. We otherwise affirm that order and the remaining orders.

Background. The defendant's new trial motions sought to vacate guilty pleas he entered on five charges, on four separate occasions beginning in 1988 and ending in 2006. On January 8, 1988, the defendant pleaded guilty to a charge of shoplifting

---

[1] For simplicity, we refer to the defendant's admissions to sufficient facts as guilty pleas. See Commonwealth v. Grannum, 457 Mass. 128, 130 n.4 (2010).

(1988 plea), for which he was ordered to pay a fifty dollar fine. On September 3, 1992, the defendant pleaded guilty to a charge of shoplifting (third or subsequent offense) (1992 plea), and was sentenced to one year of probation. On May 21, 1997, the defendant pleaded guilty to a charge of assault by means of a dangerous weapon and a charge of threatening to commit a crime (1997 pleas), and was again sentenced to one year of probation. Finally, on December 14, 2006, the defendant pleaded guilty to a charge of violating an abuse prevention order (2006 plea), and was sentenced to probation for a period ending on November 8, 2007. The dockets for the 1997 pleas and the 2006 plea reflect that the judges who accepted those pleas administered the alien warnings required by G. L. c. 278, § 29D.[2]

By letter dated March 7, 2013, the defendant filed motions for new trial in which he sought to withdraw his guilty pleas in all four of the above-described cases. He asserted ineffective assistance of counsel under Padilla v. Kentucky, supra, as a ground for relief in his motions directed to the 1992 plea, the

_____

[2] The docket for the 1997 pleas recites that the defendant received a warning under "279 §29D." We consider the reference to "279" to be a typographical error. See Commonwealth v. Marques, 84 Mass. App. Ct. 203, 205 n.8 (2013). The defendant does not argue that the judge who accepted the 1988 plea and the 1992 plea did not administer the required alien warnings incident to those two pleas.

1997 pleas, and the 2006 plea.[3] As an independent ground applicable to all five pleas, he asserted that he was not mentally competent to plead guilty on any of the four occasions. A judge of the District Court (who also was the plea judge for the first four of the five pleas challenged by the defendant) denied all four motions without a hearing and without making any findings of fact. We reserve description of the factual predicate submitted by the defendant in support of his motions for our discussion of the two grounds on which he sought relief.

Discussion. A motion for new trial is the proper vehicle through which to request that a guilty plea be vacated. Commonwealth v. Scott, 467 Mass. 336, 344 (2014). A judge "may grant a new trial at any time if it appears that justice may not have been done." Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001) (rule 30[b]). "On a motion for a new trial, the judge may rule on the motion 'on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits.'" Commonwealth v. Goodreau, 442 Mass. 341, 348 (2004), quoting from Mass.R.Crim.P. 30(c)(3), 378 Mass. 900 (1979). "Assessment of whether the motion and supporting materials suffice to raise a 'substantial issue' involves consideration of the seriousness of the issue itself and the adequacy of the showing that has

---

[3] The defendant entered the 1988 plea without counsel.

been made with respect to that issue." Commonwealth v.
Goodreau, supra. We review the judge's decision "to determine
whether there has been a significant error of law or other abuse
of discretion." Commonwealth v. Grace, 397 Mass. 303, 307
(1986).[4]

1. Competency. "Due process requires that a plea of
guilty be accepted only where 'the contemporaneous record
contains an affirmative showing that the defendant's plea was
intelligently and voluntarily made.'" Commonwealth v. Scott,
supra at 345, quoting from Commonwealth v. Furr, 454 Mass. 101,
106 (2009). Because the waiver of rights inherent in the tender
of a guilty plea must be knowing and voluntary, "a defendant
must possess a certain degree of competence to plead guilty.
'The test of competence to plead is similar to that for standing
trial.'" Commonwealth v. Robbins, 431 Mass. 442, 445 (2000),
quoting from Commonwealth v. Russin, 420 Mass. 309, 316 (1995).

In support of his contention that he was mentally
incompetent to enter the challenged guilty pleas knowingly and
voluntarily, the defendant submitted the report of Dr. Lois

---

[4] Though a failure to make findings of fact, as required by
rule 30(b), is not per se reversible error, we would have been
"materially aided," Commonwealth v. Dunnington, 390 Mass. 472,
478 (1983), if the motion judge in the present case had done so,
particularly insofar as the grounds upon which the defendant's
motions rely are set out in the materials submitted with his
motions, rather than the record of a full trial. Contrast
Commonwealth v. Siciliano, 19 Mass. App. Ct. 918, 920 n.1
(1984).

Condie, a licensed psychologist. In her report, Dr. Condie described her examination of the defendant, including her conclusions regarding his cognitive limitations. She observed that the defendant has a full scale intelligence quotient (IQ) of fifty-six, putting him in the lowest two percent of the population. She also opined that his adaptive skills ranged from an age equivalent of six years and six months to fourteen years and seven months, with most skills clustering in the eleven to thirteen year old range. As Dr. Condie explained in her report, "using [the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000)] criteria, [the defendant] would be described as having Mild Mental Retardation because his intellectual abilities fall in the range 55-70, and his adaptive skills are like that of a preadolescent child." She also observed that the defendant "has difficulty reading simple paragraphs, simple books, the newspaper, or magazines. He can print his name, but he has difficulty spelling and writing complete sentences. . . . He does not manage his checking account. His mother takes care of his finances." According to Dr. Condie's report, the defendant cooks for himself, but has difficulty following complicated recipes due to his limited ability to read. He cleans his own apartment, and is able to clean his clothes and himself. However, his mother arranged his medical and dental

appointments, and gave him reminders of his probation appointments.  The defendant does not have a driver's license, because he was unable to read the driver's manual or take the written test.

While there is no question that the defendant is of significantly below average intelligence, a defendant's low IQ alone does not determine whether he is competent to stand trial, or to enter a guilty plea.  See Commonwealth v. Prater, 420 Mass. 569, 574-575 (1995).  Cf. Commonwealth v. Daniels, 366 Mass. 601, 607 (1975) (fact that defendant was mildly to moderately mentally retarded, with an IQ of fifty-three, did not compel conclusion that he did not knowingly and willingly waive his Miranda rights).  "Rather, the test is framed in terms of the defendant's functional abilities:  'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him.'"  Commonwealth v. Goodreau, 442 Mass. at 350, quoting from Commonwealth v. Russin, 420 Mass. at 317.[5]

---

[5] Where, as in the circumstances of the 1988 plea, the 1992 plea, and the 1997 pleas, the motion judge was also the plea judge, we owe substantial deference to his assessment of the defendant's competence because the judge had the opportunity to observe the defendant directly during the proceedings.  See Commonwealth v. Prater, supra at 574.

Considered against that test, the defendant's submission is deficient.  Most significantly, it contains no suggestion that the defendant's limitations rendered him unable to consult with a rational degree of understanding with his lawyers regarding the charges he faced.[6]  See Commonwealth v. Goodreau, supra. There is likewise no indication in the record that the defendant's competency was ever identified, much less raised, by anyone -- whether his counsel, the prosecutor, or the judge -- as a topic warranting further inquiry on any of the four occasions on which he entered the challenged pleas.  See Commonwealth v. Goldman, 12 Mass. App. Ct. 699, 708 (1981). While certainly not dispositive of the question, see Commonwealth v. Adkinson, 80 Mass. App. Ct. 570, 585 (2011), it discourages us from speculating that the limitations observed by Dr. Condie might in fact have impaired the defendant's ability to participate in the plea proceedings despite Dr. Condie's

---

[6] Instead, Dr. Condie's opinion and recommendations are addressed entirely to the topic of the difficulties the defendant would face, were he to be deported to Colombia and required to live there independently.  While, as we discuss below, such considerations are highly relevant to the question of whether "special circumstances" might have led the defendant to refuse to plead guilty, had he been properly advised of the immigration consequences of a plea, see Commonwealth v. Clarke, 460 Mass. 30, 47-48 (2011), they do not determine or particularly illuminate the question of his competence to tender a plea.

failure to draw such a connection directly in her report.[7]  We discern no error of law or abuse of discretion in the conclusion by the motion judge that the materials submitted in support of the defendant's motions for new trial did not raise a substantial issue warranting an evidentiary hearing or a new trial.  See Commonwealth v. Goodreau, supra at 354-355.[8]

2.  Ineffective assistance of counsel.  Citing Padilla v. Kentucky, 559 U.S. 356, and Commonwealth v. Clarke, 460 Mass. 30 (2011), the defendant contends that he should be allowed to withdraw his 1997 plea on the charge of assault by means of a dangerous weapon and his 2006 plea on the charge of violating an abuse prevention order, because his counsel in those two

---

[7] We note as well that, despite his low IQ, the defendant graduated from high school (albeit at age twenty-three), and had managed to maintain employment in various menial jobs during his adulthood.

[8] Though we discern no abuse of discretion in the motion judge's implicit conclusion that the defendant's submission did not raise a substantial issue entitling him to an evidentiary hearing on the question of his mental competency, as discussed below we conclude that the defendant is entitled to an evidentiary hearing on the question of "special circumstances" that might have caused him to place particular emphasis on immigration consequences in deciding whether to plead guilty. The defendant remains free to introduce additional related evidence concerning his mental competence at that hearing and, if such additional evidence establishes that he was not competent at the time he tendered his guilty plea, to renew his motions for new trial based on that showing.

proceedings rendered constitutionally ineffective assistance.[9]
We agree, in part.

2006 plea:  violation of an abuse prevention order.[10]   In
support of his motion for new trial on the 2006 plea, the
defendant submitted an affidavit of his plea counsel in which
counsel does not address whether she advised the defendant of
the immigration consequences of his plea.  Counsel's affidavit
is silent as to the performance of her obligation under Padilla;
instead, it asserts that the plea judge "failed to provide the

---

[9] Although the defendant's motion on his 1992 plea also
raised a claim of ineffective assistance based on Padilla, he
does not press that claim on appeal.  This, most likely, is
because "the  holding in Padilla is to be applied retroactively
to criminal convictions obtained after the effective date of
[the Illegal Immigration Reform and Immigrant Responsibility Act
of 1996], April 1, 1997, the point at which deportation became
'intimately related to the criminal process.'"  See Commonwealth
v. Clarke, supra at 45, quoting from Padilla v. Kentucky, supra
at 365.

[10] Citing Commonwealth v. Grannum, 457 Mass. 128, 136-137
(2010), the Commonwealth asserts that the 2006 plea is not ripe
for review under Padilla because the immigration consequences
the defendant now faces rest solely on the 1992 plea and the
1997 plea for assault by means of a dangerous weapon (as they
are the offenses cited in the notice to appear for removal
proceedings).  However, Grannum involved a claim for relief
based on the statutory provisions of G. L. c. 278, § 29D, which
require a defendant to demonstrate that he faces actual, rather
than hypothetical, immigration consequences as a result of the
plea.  See Commonwealth v. Berthold, 441 Mass. 183, 185 (2004).
Under Padilla and Clarke, a defendant seeking relief is not
required to demonstrate actual or imminent immigration
consequences; instead, the test for prejudice examines the
choice the defendant would have made at the time he entered the
plea, had he been properly advised of potential immigration
consequences.  See Commonwealth v. Clarke, supra at 47-48.

defendant with his alien warnings" -- an issue not raised in the defendant's motion for new trial and an assertion contradicted by the docket. Thus, assuming that counsel was required to advise the defendant of the immigration consequences of his plea,[11] the only evidence that counsel's advice was constitutionally deficient is an assertion in the defendant's affidavit that counsel "did not tell [him] that if [he] pleaded guilty . . . he could be deported." Given "the suspicious failure to provide pertinent information from [plea counsel,] an expected and available source," see Commonwealth v. Goodreau, 442 Mass. at 354,[12] and that the only evidence that plea counsel provided constitutionally deficient advice is from the defendant himself, whose credibility is undermined by self-interest, see Commonwealth v. Torres, 469 Mass. 398, 403 (2014), we discern no error of law or abuse of discretion in the judge's conclusion

---

[11] The defendant claims that his conviction for violating an abuse prevention order made him deportable under 8 U.S.C. § 1227(a)(2)(E)(ii) (2000), which states: "Any alien who . . . is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable."

[12] As the defendant does not claim that his request for an affidavit detailing plea counsel's immigration advice was rebuffed, we think the motion judge could properly draw a negative inference from the existing affidavit. See Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 551 (2014).

that the motion did not raise a substantial issue warranting an evidentiary hearing or a new trial.

1997 plea: assault by means of a dangerous weapon. In support of his motion for new trial regarding the 1997 plea to assault by means of a dangerous weapon, the defendant submitted an affidavit of his plea counsel in which counsel stated that he had no memory of discussing potential immigration consequences with the defendant, incident to his tender of a guilty plea, and that he could state with a fair degree of certainty that he did not.[13] The Commonwealth does not dispute the defendant's contention that, combined with his 1992 conviction of shoplifting, a crime of moral turpitude, the defendant's 1997 conviction of assault by means of a dangerous weapon, likewise a crime of moral turpitude, rendered the defendant deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) (1994 & Supp. II 1996) ("Any alien . . . convicted of two or more crimes involving moral

---

[13] In detail, counsel's affidavit stated that the defendant "never indicated that he was a citizen of another country. I have no memory of discussing the potential for a conviction on these charges leading to immigration consequences. I do believe if I had advised him of such, I would have a recollection of such conversation as I remember him and his case well. Thus I can state with to [sic] a fair degree of certainty that I did not advise him that the charges against him were considered crimes of moral turpitude for immigration purposes, that conviction of two or more crimes of moral turpitude would make him deportable, or that in light of his record of convictions as of 1996, he already have [sic] had at least one conviction that would be a conviction for a crime of moral turpitude, and additional convictions for such offenses would render him subject to deportation."

turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined thereof and regardless of whether the convictions were in a single trial, is deportable").  Based on this contention, the defendant asserts that, as plea counsel failed to advise him of the potential immigration consequences flowing from the 1997 plea, counsel's advice was constitutionally deficient.

We agree with the defendant's assertion that counsel's advice was constitutionally deficient.[14]  The legal authority provided by the defendant, and the additional authority we have found, suggests that the crimes at issue, shoplifting[15] and

_____

[14] As we have also observed, the Commonwealth does not dispute the defendant's assertion that shoplifting and assault by means of a dangerous weapon are crimes involving moral turpitude.  However, we make no comment on whether the crimes of shoplifting and assault by means of a dangerous weapon under Massachusetts law are in fact, or as applied to the defendant, crimes involving moral turpitude.  See, e.g., Mejia v. Holder, 756 F.3d 64, 68-69 (2014) (indicating that shoplifting under Massachusetts law may not always qualify as a crime involving moral turpitude).  As "[c]ounsel's performance must be measured against that of an ordinary fallible lawyer, at the time of the alleged professional negligence, and not with the advantage of hindsight," Commonwealth v. Drew, 447 Mass. 635, 641 (2006) (quotations and citation omitted), we look only to the legal authority available to plea counsel in 1997.  See notes 15 and 16, infra.

[15] See, e.g., Mattis v. Immigration & Naturalization Serv., 774 F.2d 965, 967 (9th Cir. 1985) (indicating shoplifting is a crime involving moral turpitude); Wong vs. Immigration & Naturalization Serv., U.S. Ct. App., No. 92-1721, slip op. at 9 n.5 (1st Cir. Dec. 8, 1992) (noting that characterization of shoplifting as a crime involving moral turpitude, "while not unanimously endorsed, finds support in the caselaw of [the First

assault by means of a dangerous weapon,[16] are crimes involving

moral turpitude.  Thus, those authorities indicate that by

pleading guilty to assault by means of a dangerous weapon in

---

Circuit Court of Appeals]"); Farrell-Murray vs. Immigration & Naturalization Serv., U.S. Ct. App., No. 92-9549, slip op. at 2 (10th Cir. Apr. 28, 1993) (rejecting claim that shoplifting is not a crime involving moral turpitude, noting that "both the courts and the [board of immigration appeals] have historically held that, regardless of the amount stolen or the sentence imposed, crimes of theft involve moral turpitude").  See also Robert D. Ahlgren, State Department Implementation of the 1990 Act:  Grounds of Exclusion Related to Criminal Activity, in 24th Annual Immigration and Naturalization Institute 169-170 (1991) ("[A crime involving moral turpitude] is any crime showing an innate 'moral depravity.'  This can include anything from shoplifting to murder"); Noncitizens and Criminal Offenses: Protecting Your Noncitizen Client 10 (Mass. Continuing Legal Educ. 1995) (noting that shoplifting is a crime involving moral turpitude).  Cf. Morasch v. Immigration & Naturalization Serv., 363 F.2d 30, 31 (9th Cir. 1966) ("[P]etty or grand larceny, i.e., stealing another's property qualifies [as a crime involving moral turpitude"]); Matter of P, 4 I. & N. Dec. 252, 252-254 (Acting A.G. 1951) (holding that theft of clothing from store was a crime involving moral turpitude); Matter of Neely & Whylie, 11 I. & N. Dec. 864, 864-866 (B.I.A. 1966) (noting that theft of goods from store was a crime involving moral turpitude), overruled on other grounds by Matter of Urpi-Sancho, 13 I. & N. Dec. 641, 642 (B.I.A. 1970).

[16] See, e.g., Matter of O, 3 I. & N. Dec. 193, 197-198 (B.I.A. 1948) (assault by use of a dangerous weapon is a crime involving moral turpitude); Matter of J, 4 I. & N. Dec. 512, 514-515 (B.I.A. 1951) (noting that "[a]ssault with a dangerous or deadly weapon has repeatedly been held to be a crime involving moral turpitude," and holding that assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A, is a crime involving moral turpitude based on definition of dangerous weapon and evil intent shown by use of dangerous weapon); Matter of Goodalle, 12 I. & N. Dec. 106, 107 (1967) (assault by use of a knife is a crime involving moral turpitude).  Cf. Shaw v. Robbins, 338 F. Supp. 756, 758 (S.D. Me. 1972) (indicating that for purpose of evidentiary ruling, Massachusetts conviction of assault with a dangerous weapon is a crime involving moral turpitude).

1997, the defendant became "deportable" under 8 U.S.C. § 1227(a)(2)(A)(ii). As plea counsel's affidavit indicates that he provided no advice on the potential immigration consequences of the plea, his advice was constitutionally deficient under Padilla.

A showing that plea counsel's advice was constitutionally deficient does not alone entitle the defendant to relief, however; the defendant must also demonstrate prejudice. See Commonwealth v. Clarke, 460 Mass. at 46-47. "In the context of a guilty plea, in order to satisfy the 'prejudice' requirement, the defendant has the burden of establishing that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. at 47, quoting from Hill v. Lockhart, 474 U.S. 52, 59 (1985). As a threshold matter, the defendant must assert that he would not have pleaded guilty, Commonwealth v. Clarke, supra at 47, and the defendant in the present case has done that in his affidavit submitted in support of his motion for new trial. In addition, the defendant must establish that such a choice would have been rational in the circumstances, by "showing that (1) he had an 'available, substantial ground of defence,' Commonwealth v. Saferian, [366 Mass. 89, 96 (1974)], that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the

plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time[footnote omitted]; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty." Commonwealth v. Clarke, supra at 47-48, quoting from Hill v. Lockhart, supra at 60.

The defendant in the present case does not assert that he can satisfy either of the first two methods to show prejudice, but contends that his submissions in support of his motion sufficed to raise a substantial issue concerning the third.

As we have observed, see note 6, supra, though Dr. Condie's report did not offer an opinion concerning the defendant's mental competence to enter a guilty plea, it made several observations concerning the difficulties he would face, were he to attempt to live independently in his native Colombia. As we noted earlier, the defendant has not lived in Colombia since he moved to the United States in 1979, at age twelve, and he is largely dependent on his family members in the United States for many of the basic requirements of daily life. Though he has maintained menial employment at times in the past, he depends to a significant extent on governmental benefits to meet his financial needs. In addition to the subsidiary factual

observations we recounted earlier, we quote Dr. Condie's

"Opinion and Recommendations" in full in the margin.[17]

---

[17] "In my clinical opinion, it is likely that Mr. Cano would have extreme difficulty taking care of himself and remaining safe were he deported to [Colombia].  He would be vulnerable to victimization because of limited cognitive abilities and limited adaptive skills.  He would not have the mental sophistication needed to determine when he was being taken advantage of.

"Mr. Cano speaks Spanish but his primarily [sic] language has been English since high school.  He is functionally illiterate and he would have difficulty reading correspondence, books, and other materials needed to adapt to a different culture.  He relies heavily upon his parents and siblings for help with finances, finding a place to live, and finding employment.  It is unlikely he would be able to complete these tasks independently.  He does not have sufficient work skills to keep a job long term.

"Mr. Cano can cook and keep a clean apartment, but he does not have a sophisticated grasp of cooking and nutrition.  With respect to interpersonal relationships, it is likely he would be vulnerable to a heavy sense of loss were he to lose contact with his family members.  He does not have sophisticated communication skills to use technology such as e-mail, Skype, or FaceTime to contact family members; nor would he have the means or travel skills to meet them somewhere for a visit.  Contact would be limited to the telephone.  It is unlikely he would be able to protect himself from crime victimization or involvement because of his difficulty determining who is a reasonable candidate for his friendship and trust.  He has had difficulty forming and keeping adult friendships and his relationships with women have been of short duration.  He has not demonstrated sufficient skills to support or raise his children.  He makes poor decisions in his social life and his choice of friendships.

"Mr. Cano is not adept at using community resources.  Any arrangements to access community resources have been accomplished on his behalf by his parents.  He uses his leisure time to perform chores for people in the neighborhood, but he also is likely to wander the streets.  He has limited skills to discern when he faces interpersonal and community safety issues. In my clinical opinion, deportation of Mr. Cano would raise significant safety concerns for him."

In light of the extreme difficulties Dr. Condie suggests the defendant would face were he to be returned to Colombia, we agree with the defendant that he has raised a substantial issue concerning the presence of "special circumstances" that would have made it rational for him to reject a guilty plea and proceed to trial on the charge of assault by means of a dangerous weapon.  We accordingly remand the matter to the District Court for an evidentiary hearing on the question.

Conclusion.  We vacate so much of the order dated April 16, 2013, that denies the defendant's motion for new trial on docket no. 9611CR7474A (assault by means of a dangerous weapon), and we remand that matter to the District Court for further proceedings consistent with this opinion.  We affirm so much of the order dated April 16, 2013, that denies the defendant's motion for new trial on docket no. 9611CR7474B (threatening to commit a crime). We affirm the orders dated April 16, 2013, denying the motions for new trial on docket nos. 8811CR0131 (shoplifting), 9211CR4304 (shoplifting, third or subsequent offense), and 0611CR3665 (violation of an abuse prevention order).

So ordered.