COMMONWEALTH *vs.* JOSEPH C. DeMINICO.

Plymouth. May 7, 1990. - August 8, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Robbery. Practice, Criminal,* Competency to stand trial, Findings by judge, Voir dire, Waiver. *Waiver. Witness,* Expert.

The record of a criminal trial, as well as the judge's own observations of the defendant's demeanor and conduct in the courtroom during eight days of proceedings, supported the judge's determination as to the defendant's continuing competency to stand trial. [232-237]

A judge's findings of fact at an evidentiary hearing, held following remand of a criminal case, were to stand unless clearly erroneous or not supported by the record, even though the judge may have adopted verbatim many of the Commonwealth's proposed findings. [238-239]

The record of an evidentiary hearing, held following remand of a criminal case, fully supported the judge's conclusion that the defendant accepted his attorney's advice not to testify at his trial. [239-244]

INDICTMENTS found and returned in the Superior Court Department on April 30, 1985.

The cases were tried before *John D. Sheehan, J.*

*Charles W. Rankin* for the defendant.

*Mary O'Sullivan Smith,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Joseph C. DeMinico, was convicted by a jury of murder in the first degree and armed robbery. He appeals, alleging error in the judge's refusal to declare a mistrial on the fifth day of trial, because the defendant allegedly then was incompetent to stand trial. He also alleges that his right to testify was violated because his trial counsel did not permit him to testify in his own defense in spite of the defendant's desire to do so. The defendant also requests that we exercise our power under G. L. c. 278, § 33E (1988 ed.), and order a new trial or reduce the verdict

to a lesser degree of guilt. After oral argument, we remanded
the case to the trial judge for an explicit determination on
the record as to whether the defendant was competent on the
fifth day of trial and for an evidentiary hearing and findings
of fact and a ruling of law on the defendant's allegation that
his desire to testify on his own behalf was not honored. On
remand, the trial judge determined that the defendant was
competent on the fifth day of trial. Following an evidentiary
hearing, he concluded that the defendant's right to testify
was not violated. The defendant argues that the judge's find-
ings on remand are clearly erroneous. We affirm the convic-
tions. We also conclude that this is not a case in which we
should exercise of our power under G. L. c. 278, § 33E, in
favor of the defendant.[1]

We summarize the evidence on which the jury could have
based their verdicts. In March, 1985, while recuperating
from surgery in which he received a colostomy bag, the de-
fendant lived with his mother, Maria DeMinico. The defend-
ant's brother and nephew also lived in the mother's house.
On March 27, 1985, the defendant and his mother quarrelled
over one hundred dollars that he previously had given to her
and that she had refused to return. Later that day, the de-
fendant decided to kill his mother because she would not re-
turn the money and because he did not want to live with her.
He wrote a note saying that his mother did not want him
staying at the house and that he did not want to live or stay
at the house "[o]r live anymore." He put the note in his
pocket.

On the morning of March 28, 1985, the defendant's
nephew heard the defendant and his mother argue again
about the money. The defendant waited until his brother and
nephew left for work. The defendant went to the kitchen
where his mother was ironing. He reached into his back
pocket and retrieved a clothesline rope which he used to walk

[1]The defendant also raised the same allegations of error in postconvic-
tion motions. The record before us does not show that the judge acted on
the motions.

his dog. The defendant tied the rope around his hand, walked up behind his mother, placed the rope around her neck and began strangling her. As she struggled to remove the rope, she fell to the floor in a sitting position. The defendant placed his knee against her back and tightened the rope until she fell unconscious. The defendant taped his mother's mouth, removed a knife from the kitchen drawer, and stabbed her once in the neck and once in the chest. Leaving the knife in the chest, the defendant dragged the body to a hallway, placed the note written the previous day on the body, and covered it with a sheet. The defendant ransacked the house, taking his brother's handgun and jacket, his mother's jewelry, his nephew's jewelry, and $200. The defendant then telephoned his sister and told her that he had killed their mother.

The defendant took a bus to Boston, pawned some of the jewelry, and took an afternoon train to New York City, where he lived for several days in Grand Central Station. On April 3, 1985, in order "to have peace of mind," the defendant surrendered himself to the New York City metropolitan police. After receiving several full recitations of his Miranda rights, the defendant gave a statement detailing the murder of his mother. Despite warnings by his New York attorney and both New York and Massachusetts police officers, the defendant voluntarily made inculpatory statements to Massachusetts police officers accompanying the defendant during the plane ride back to Boston. The Massachusetts officers did not question the defendant about the case.

1. *The defendant's competency to stand trial.* After arraignment, the defendant was committed to Bridgewater State Hospital (Bridgewater) for observation pursuant to G. L. c. 123, § 15 (*b*) (1988 ed.). In July, 1985, Dr. Philip Luber, a psychologist at Bridgewater, reported to the trial judge that the defendant was not competent to stand trial. In February, 1986, Dr. Luber filed a second report recommending that the defendant be found competent to stand trial. On June 9, 1986, the judge declared the defendant competent to stand trial. After two days of pretrial motions,

the trial commenced on December 10, 1986. On December 15, 1986, when all of the evidence had been introduced and both sides had rested, the defendant's trial counsel[2] argued a motion "for an examination to determine whether the [d]efendant is at present competent to stand trial." On the morning of December 16, 1986, Dr. John Daignault, a court-appointed psychologist, examined the defendant. He concluded that the defendant was experiencing a psychotic episode and, in response to a question from the judge, stated that any possibility that the defendant was attempting to manipulate the court was secondary to the psychosis. He recommended that the defendant be found incompetent. The defendant moved for a mistrial. On December 17, 1986, after a full competency hearing, the judge denied the defendant's motion and ruled that the trial would continue.

In written findings dated December 17, 1986, the judge found that, since October 1, 1986, the defendant had refused to take medication prescribed by medical personnel at Bridgewater and stated "that such refusal ha[d] affected his competency to stand trial. . . . I hold that the defendant has waived his right to be tried while competent. However, I further rule that the defendant was competent during that period of time which was necessary to aid and assist his lawyer in the preparation and trial of his case" (citation omitted). The defendant appealed from his subsequent convictions, claiming it was error to continue the trial.

On remand, the judge made the following findings:[3] "I find that the defendant was competent on December 16, 1986. As noted in my findings dated December 17, 1986, the defendant was an active participant throughout the trial. He fre-

---

[2]The defendant is represented by other counsel on appeal.

[3]The judge's findings on remand were based on the findings of fact dated December 17, 1986; the record of the competency hearing, which included Dr. Daignault's report; the defendant's Bridgewater records; reports of psychiatrists, Dr. Payne, Dr. Moore, and Dr. Kelly; the report of Dr. Luber; and "the conduct and demeanor of the [d]efendant throughout the motion [hearings] and trial which took place from December 9 to December 15, 1986."

quently conferred with his lawyer both orally and in writing, asked intelligent questions of the Court and offered relevant and responsive answers to questions put to him by the Court. He frequently interjected his thoughts throughout the trial which were relevant and responsive to the testimony being received and which indicated an intelligent understanding of what was taking place in the courtroom. Several times, the defendant corrected, or attempted to correct, a factual discrepancy in a witness's testimony. Many of the defendant's astute observations occurred on December 15, 1986, the fourth and final day of testimony. The defendant interjected relevant, perceptive, and responsive observations throughout the argument and charge portion of the trial as well, on December 17, 1986. Throughout the trial, he showed an appreciation of the roles of the court personnel. While the defendant's conduct was disruptive throughout the trial, his behavior was not violent, bizarre or irrational."

The judge stated that "[c]ounsel for [the] [d]efendant concedes that [the] [d]efendant was competent up through December 15, 1986. I observed no change in [the] [d]efendant's demeanor throughout the trial. Both prior to Dr. Daignault's December 16, 1986 examination of [the] [d]efendant, and after that examination, the defendant continued to exhibit a keen understanding of the proceedings against him. Throughout the trial, the defendant took an active role in his own defense. On December 15, 1986, both sides had rested and defense counsel indicated he was prepared to give his final argument."

The judge concluded, saying, "[b]ased on my observations at trial, I concur with Dr. Daignault's observation that the defendant was prone to manipulative conduct. While the defendant's competency may have been failing on December 16, 1986, I find this was a direct result of [the] defendant's refusal to take the prescribed medications. Any deterioration in competency did not reach the level of rendering the defendant incompetent on December 16, 1986."

The defendant argues that "[t]his finding cannot be supported by the record." He claims that the record "furnishes

no basis for disbelieving expert testimony of Dr. Daignault
. . . [who] was unequivocal in testifying that the defendant
was incompetent, that he was in the midst of a psychotic epi-
sode, and that the possibility of the defendant's malingering
was secondary to his psychotic episode."[4] The defendant con-
cludes that "the lower court violated the defendant's consti-
tutional rights by permitting the trial to go forward after the
examining psychologist had found him incompetent." We do
not agree.

Dr. Daignault's conclusion that the defendant was incom-
petent did not mandate a finding of incompetency. "Judicial
experience with psychiatric testimony makes it abundantly
clear that it would be unrealistic to treat an opinion . . . by
an expert on either side of . . . [an] issue as conclusive. That
is no less so in a case where one party has not secured an
expert to express a contrary opinion. The law should not, and
does not, give the opinions of experts on either side of . . .
[an] issue the benefit of conclusiveness, even if there are no
contrary opinions introduced at the trial." *Commonwealth* v.
*Lamb*, 372 Mass. 17, 24 (1977), quoting *Commonwealth* v.
*Smith*, 357 Mass. 168, 178 (1970).

We agree with the defendant that the doctor's testimony,
if disbelieved, would not constitute evidence to the contrary.
See *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 n.1
(1979). We do not agree with the suggestion in the defend-
ant's supplemental brief that the judge merely disbelieved
Dr. Daignault's testimony and therefore found contrary facts

---

[4]The defendant argues that there is no support in the record for the
judge's determination that Dr. Daignault observed "that the defendant
was prone to manipulative conduct." We disagree. In response to the
judge's question at the competency hearing, asking whether "this may be a
staged presentation at the [eleventh] hour in this trial," Dr. Daignault
said, in reviewing "the records as far back as 1955 . . . [t]here is a pattern
of [the defendant's] presenting evidence of being an anti-social personality
disorder, . . . insofar as he might attempt to manipulate people to his own
best interests and perhaps even feign or malinger a disorder in order to
accomplish something for his own best interests." It also was Dr.
Daignault's opinion that any manipulation was "secondary to [the defend-
ant's] acute state of mental illness of a psychotic proportion."

unsupported by any other evidence. The judge's findings on remand indicate that he based his findings in large part on his own observations of the defendant's demeanor and conduct in the courtroom over eight days, both before and after December 16, 1986, and on the fact that he "observed no change in [the] [d]efendant's demeanor throughout the trial." At the competency hearing, the judge had before him the defendant's records from six hospital admissions connected with unrelated criminal charges and medical conditions dating back to 1955, including three previous, lengthy evaluations at Bridgewater. Those records reveal that at least eleven psychiatrists or psychologists evaluated the defendant between 1955 and 1986 and not one diagnosed the defendant as psychotic. According to the records, six doctors looked for symptoms of psychosis, but found none.

A "defendant's demeanor at trial and response to questioning by the judge . . . [are] relevant to a decision on the merits of the competency issue." *Commonwealth v. Hill*, 375 Mass. 50, 58 (1978). See *Commonwealth v. Vailes*, 360 Mass. 522, 525 (1971). Cf. *Commonwealth v. Goldman*, 12 Mass. App. Ct. 699, 708 (1981) (in deciding whether to conduct a competency hearing, "weight must be afforded to the trial judge's first-hand opportunity to observe the defendant throughout the trial, and his implicit judgment that neither the behavior reported nor [the defendant's] appearance was indicative of incompetence").

The trial transcript before us is replete with instances where the defendant addressed the judge, witnesses, defense counsel, or the prosecutor. The defendant's statements were responsive to the circumstances and support the judge's determination that the defendant had " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against him.' " *Common-*

*wealth* v. *Vailes*, 360 Mass. 522, 524 (1971), quoting *Dusky* v. *United States*, 362 U.S. 402 (1960) (per curiam).[5]

In addition, prior to trial three psychiatrists and one psychologist recommended that the defendant be found competent to stand trial and all four testified that when they examined the defendant, they had found him competent. The issue of the defendant's competency was raised again on December 15, 1986, the fourth day of the trial. One of the psychiatrists testified on December 15, 1986, that there was "no substantial change" in the defendant's appearance and affect on December 15 from when he saw the defendant in February, 1986. That the defendant's demeanor appeared the same on December 16; 1986, as it was prior to that date, supports the judge's determination that the defendant was competent on December 16, 1986.[6]

2. *The defendant's right to testify.* On appeal from his convictions, the defendant argues that his decision to testify at his trial was not honored. We remanded the case to the trial judge for an evidentiary hearing, findings of fact, and rulings of law. A hearing was held on June 7, 1990, at which time the trial transcript and various postconviction motions and filings were introduced and the defendant's trial counsel and Dr. Daignault testified. The defendant did not testify.

---

[5]The defendant suggests that the judge did not apply the proper legal test for competency, claiming that the judge "fail[ed] to address Dr. Daignault's conclusion that the defendant was unable to consult with his attorney with a reasonable degree of rational understanding." We disagree. The judge's findings show that he applied the proper test. See *Vailes*, *supra* at 524; *Dusky* v. *United States*, 362 U.S. 402 (1960) (per curiam).

[6]The judge stated that "[c]ounsel for [the] defendant concedes that [the] [d]efendant was competent up through December 15, 1986." The defendant's appellate counsel argues that this finding is not supported by the record and further claims that, at the June, 1990, hearing he did not concede that the defendant was competent prior to December 16. On December 15, trial counsel moved for an updated competency examination. At that time, he did not suggest that he was challenging the original determination of competency to stand trial. The judge's use of the word "concedes" is perhaps stronger than suggested by the record. The record does show that on December 15, 1986, trial counsel stated "for the record, we all did agree he was competent to stand trial."

The defendant claims that we should reject the lower court's findings because the judge adopted verbatim many of the Commonwealth's proposed findings of fact. In *First Pa. Mortgage Trust* v. *Dorchester Savs. Bank*, 395 Mass. 614, 622 & n.12 (1985), we said that, "[e]ven if a judge adopts verbatim findings prepared by prevailing counsel, '[t]hese findings, though not the product of the workings of the . . . judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence.' *United States* v. *El Paso Natural Gas Co.*, 376 U.S. 651, 656 (1964). Although we have criticized this practice, we nevertheless do not reject or set aside such findings if supported by evidence. See *Lovett* v. *Commonwealth*, 393 Mass. 444, 447 (1984); *Lewis* v. *Emerson*, 391 Mass. 517, 524 (1984); *Cormier* v. *Carty*, 381 Mass. 234, 237-238 (1980). See generally 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2578, at 704-708 (1971)." See *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 218-219 (1986). We examine the findings to determine if they are "clearly erroneous" or not supported by evidence in the record. See *First Pa. Mortgage Trust, supra.* See also *Anderson* v. *Bessemer City*, 470 U.S. 564, 572 (1985); *Hassine* v. *Jeffes*, 846 F.2d 169, 172-173 n.1 (3d Cir. 1988); *Falcon Constr. Co.* v. *Economy Forms Corp.*, 805 F.2d 1229, 1232-1233 (5th Cir. 1986); *Allied Chem. Int'l Corp.* v. *Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481 (2d Cir. 1985), cert. denied, 475 U.S. 1099 (1986); *Unt* v. *Aerospace Corp.*, 765 F.2d 1440, 1444-1445 (9th Cir. 1985); *Southern Pac. Communications Co.* v. *American Tel. & Tel. Co.*, 740 F.2d 980, 994-995 (D.C. Cir. 1984). In *Commonwealth* v. *Hawkesworth*, 405 Mass. 664 (1989), we noted that "the United States Supreme Court has taken the same approach as we have to the verbatim adoption of proposed findings. The Court carefully scrutinizes the record, but does not change the standard of review." *Id.* at 669 n.5, and cases cited. In *Hawkesworth*, we also said that "the standard for appellate review of facts in both civil and criminal cases is identical,

and we [saw] no reason to create a special rule in [criminal cases]." See *id.* at 670.

The defendant claims that he wanted to testify at his trial and that he did not acquiesce in trial counsel's decision to rest without his testifying. He argues that trial counsel disagreed with the defendant and that trial counsel, on his own initiative and in contravention of the defendant's desires, rested without the defendant's taking the stand. The judge found that the record before him, "most particularly the trial transcript and post conviction filings, demonstrates the acquiescence of the defendant in the decision not to testify at trial." The defendant argues that that determination is erroneous.[7] We conclude that the record of the hearing fully supports the judge's conclusion.

The Commonwealth concedes that the trial transcript shows that four times during the presentation of evidence on December 15, 1986, the defendant expressed a desire to testify. The record also shows, however, that later that same day, when the decision to rest without the defendant's testifying was announced in open court in the defendant's presence, he gave no indication that he disagreed with that decision. Indeed, the defense rested twice, first after the close of its own case-in-chief and again after the Commonwealth's rebuttal witness. In neither instance did the defendant state that he wanted to testify or object to his attorney's act in resting. The judge placed some significance on the defendant's silence at both of these points in light of this defendant's pattern of speaking out during the trial.[8] The defend-

---

[7]The defendant asserts that we should ignore the judge's findings and determine that the defendant's right to testify was not honored. "[T]he responsibility of weighing credibility and finding fact is reposed in the trial court." *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977). We do not find facts.

[8]The judge's findings with respect to the trial transcript are as follows: "[The d]efendant's silence in this regard is to be contrasted with his frequent, unrestrained and assertive interjections and objections throughout trial. Throughout the eight days I observed the [d]efendant in the courtroom, I observed an individual who made frequent unabashed requests of the Court, who was vocal, bold and often argumentative in his many dis-

ant's frequent interjections expressing his thoughts and desires, and his communications directly to the judge rather than through his attorney, indicate that he did not hesitate to voice any objection directly.[9]

Further, on the day defense rested, the defendant was active during the testimony of the Commonwealth's rebuttal witness, interrupting that witness several times with responsive remarks and not once during those interruptions did he express a desire to testify.[10] The judge, who saw the defend-

---

agreements with what was occurring throughout the proceedings, and who displayed a strong willed and determined personality whose every need and desire throughout the trial was verbalized and effectively communicated to the Court and counsel.

"The [d]efendant had frequent conversations with me throughout the trial. He repeatedly communicated with me about his medical needs, and other objections he had throughout the proceedings. His frequent communications with the Court indicated that he was comfortable with, and not hesitant to verbalize his concerns to this Court.

"Immediately after the defense rested in open court the second time and the jurors were instructed accordingly, the defendant engaged the Court in a discussion about some difficulties he was having with the court officers with respect to a supply of colostomy bags. Nowhere in this discussion did the defendant note any objection, difficulty or disagreement with trial counsel nor did he make any mention of his desire to testify. No objection was raised by [the d]efendant the following day prior to, or during final arguments and charge. I find that had this defendant desired to testify and had he not acquiesced in the decision not to testify, he would have told the Court at the point that the defense rested. . . .

"While [the] defendant may have previously objected to defense counsel's decision to not put him on the stand, [the] defendant's refusal to object when defense counsel rested indicated to the court that, at the close of the evidence, the defendant acquiesced with defense counsel's objection."

[9]The defendant argues that "the lower court is trying to impose an admission by silence upon the defendant." We do not agree. We believe that the judge's findings simply point to an utter lack of credible evidence that the defendant disagreed with trial counsel's decision.

[10]After the defense rested for a second time, in a sidebar conference, trial counsel said: "One thing, Judge, I did rest. The defendant did not take the stand. I would just like the record to reflect that he has insisted — . . . I suggest that he has told me his position about testifying in his own behalf. I disagree with that, and for the record I would say on my own initiative and in contradiction to what he has indicated I have chosen at this time to rest without [the defendant] taking the stand. It's my opinion that it would serve no useful purpose in his defense."

ant throughout the trial, could conclude that the defendant accepted trial counsel's advice that he (the defendant) not testify. Although earlier in the trial the defendant expressed a desire to testify, once the decision to rest without his testifying was announced, the defendant never again stated or in any way indicated that he wanted to testify.

The defendant argues that "[i]t is illogical to have expected [the defendant] to express his disagreement [to the judge] because the attorney had accurately reported to the court the state of the disagreement" during a side-bar conference.[11] He claims that he "relied upon his attorney to report the dispute to the court. . . . Counsel was acting as the defendant's voice at that point, as the trial court had repeatedly explained to the defendant was the proper way for the trial to be conducted." The record shows, however, that from the start of the trial through closing arguments, the defendant rarely, if ever, relied on his attorney to act as his voice.

---

[11]The defendant explains his silence by arguing that his ability to testify at the hearing was impeded. First, he asserts that, because he "was in the midst of an acute psychotic episode" in December, 1986, it would have been difficult for him in 1990 to accurately recall and testify as to his desire in 1986. That argument fails because the trial judge found that the defendant was competent in 1986. Second, the defendant asserts that he is presently suffering from a "bi-polar disorder" and is receiving antipsychotic and other medications over his objection pursuant to a court order, which found that the defendant was incompetent to make medical decisions. The judge found that, "[w]hile counsel for [the d]efendant offered a document entitled 'Findings on the Issue of Competence and Substituted Judgment and Order Authorizing Medical Treatment' dated March 20, 1990, this document is insufficient explanation for the defendant's failure to testify or offer any factual support by way of an affidavit at the evidentiary hearing." The document alone and unexplained is insufficient to show that the defendant was incompetent at the June hearing or that previous to that day he never was able to file an affidavit as to his allegation that his right to testify was not honored. The judge determined that "the medication which is apparently being dispensed to [the d]efendant as a result of this order authorizing medical treatment would render the defendant competent on the date of the evidentiary hearing, June 7, 1990." We did not see the defendant. Nothing in the record indicates that the judge's conclusion that the defendant was competent on June 7, 1990, is clearly erroneous. Last, the record does not reflect that the defendant was incompetent at all times prior to June 7, 1990, and therefore unable to file an affidavit.

Indeed, the defendant interrupted the trial on at least fifty-nine separate occasions. After the side-bar conference, the defendant, of his own initiative, engaged the judge in a colloquy regarding the defendant's medical needs and, again, the defendant expressed no dissatisfaction with his attorney's decision to rest without putting him on the witness stand.

The defendant argues that a judge should conduct a voir dire to guarantee that a defendant has knowingly waived his right to testify, "where the record at trial clearly demonstrates a disagreement between lawyer and client regarding the defendant's decision to testify." He contends that, "[w]hen such a disagreement is apparent, the court should advise the defendant that he has the right to testify, that he has the right not to testify, that the decision should be made after consultation with counsel, that the decision whether to testify is ultimately that of the defendant, and that the court will protect the defendant's decision." We do not agree. There was no error in not conducting such a voir dire.[12] See *Commonwealth* v. *Waters*, 399 Mass. 708, 716-717 (1987).

In addition, the defendant was present at the evidentiary hearing in June, 1990, and, thus, he did have an opportunity to engage the judge in a colloquy and to state whether he agreed with trial counsel's decision. The defendant did not testify nor did he submit an affidavit. The defendant argues that his silence may not be used against him. The judge determined: "[The d]efendant's failure to testify or to produce an affidavit in support of his allegation that he was denied his right to testify offers *further support* for my finding that [the d]efendant acquiesced in the decision not to testify at trial. I find, however, that notwithstanding this factor, the record before me, most particularly the trial transcript and post conviction filings, demonstrates the acquiescence of the de-

---

[12]Although there was no error in not conducting the voir dire, the better course for a judge is to conduct a voir dire if a dispute between the defendant and his counsel is brought to the judge's attention on the record.

fendant in the decision not to testify at trial" (emphasis supplied).[13] There was no error in the judge's ruling.

The defendant also is not aided by the testimony at the June hearing of Dr. Daignault, who stated that, during his evaluation of the defendant on December 16, 1986, the defendant said "that he wanted to testify that he was wishing to inform the [c]ourt that he was guilty of his crime, that he wanted to describe the crime in detail, and admit that he had done a terrible thing." The judge found that Dr. Daignault's testimony "was not specific as to the context and time frame of [the d]efendant's alleged desire to testify." In the absence of time frame or context, Dr. Daignault's testimony provides no evidence as to the defendant's state of mind regarding the decision to rest at the time the decision to rest was made.

Trial counsel testified at the hearing that the defendant wanted to testify at trial, that he overrode the defendant's decision, and that the defendant never acquiesced in his advice to rest without placing the defendant on the stand. The judge made no specific findings with respect to the testimony of trial counsel. The defendant argues that the judge "wholly ignores" trial counsel's testimony. The Commonwealth argues that reviewing the record of trial counsel's testimony supports the inference that the trial judge did not credit trial counsel's testimony. We agree. The record reflects that counsel's answers to questions were non-responsive, argumentative, and evasive. Further, the trial judge could conclude that trial counsel's inability to recall courtroom events from 1986

---

[13]With respect to the defendant's postconviction filings, the judge found "that trial counsel continued to represent the [d]efendant following his conviction in December 1986 up until February of 1988. In addition to the Notice of Appeal counsel filed several post conviction motions on behalf of the defendant, including a motion for a new trial. The defendant's motion for a new trial which was filed in January of 1987 and amended in June of 1987, did not include [the d]efendant's allegation that his right to testify was not honored." See note 1, *supra*. The defendant argues that it is "ludicrous . . . [to expect trial counsel] to claim the error of his own ways in a post-trial motion." We do not agree. Trial counsel already had brought the defendant's allegation to the judge's attention at sidebar. We agree with the judge that, although not conclusive, some weight may be accorded trial counsel's decision not to raise this issue in postconviction motions.

even when refreshed by review of the transcript discredited counsel's testimony as not credible. "Questions of credibility are, of course, for the trial judge to resolve." *Commonwealth v. Bottari*, 395 Mass. 777, 780 (1985).

3. *General Laws c. 278, § 33E.* Reviewing the entire record, we conclude that there is no reason to exercise our power under G. L. c. 278, § 33E, in the defendant's favor and order a new trial or enter a verdict of a lesser degree of guilt.

*Judgments affirmed.*