## COMMONWEALTH *vs.* HEATHER PAINTEN.

Bristol. February 1, 1999. - May 6, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel. *Practice, Criminal,* Admissions and confessions, Continuance, Judicial discretion, Competency to stand trial, Instructions to jury, Reasonable doubt, Assistance of counsel, Capital case. *Evidence,* Admissions and confessions, Self-defense. *Telephone. Self-Defense. Homicide. Intoxication. Robbery.*

Evidence at a hearing on a criminal defendant's motion to suppress statements made to police officers amply warranted the judge's finding that the defendant was not in custody when the statements were made [540-541], and thus subsequent statements made by the defendant at the police station after Miranda warnings had been given were not "fruit of the poisonous tree" [542].

The record of a criminal defendant's hearing on a motion to suppress her confession to police clearly demonstrated that the defendant was advised at the police station of her right pursuant to G. L. c. 276, § 33A, to make a telephone call. [542]

On the third and final day of a murder trial, the judge did not abuse his discretion in denying defense counsel's request for a continuance and a hearing on the defendant's competence, where there was nothing in the record supporting a claim that the defendant was incompetent. [542-544]

At a murder trial, there was no substantial likelihood of a miscarriage of justice arising from the judge's instructions on proof beyond a reasonable doubt [544-545]; the defendant was not entitled to a "castle" self-defense instruction [545-546]; the judge's single incorrect sentence in his otherwise correct instruction on deliberate premeditation did not create a substantial likelihood of a miscarriage of justice [546-547]; the judge correctly instructed the jury on extreme atrocity or cruelty [547-548]; error, if any, in the judge's instruction on the elements of armed robbery created no substantial risk of a miscarriage of justice [549]; and the judge's failure to give instructions that the defendant did not request did not create a substantial risk of a miscarriage of justice [549].

No ineffective assistance of counsel at a murder trial was demonstrated on appeal. [549-550]

INDICTMENTS found and returned in the Superior Court Department on February 23, 1995.

A pretrial motion to suppress evidence was heard by *Gordon L. Doerfer*, J., and the cases were tried before *Richard J. Chin*, J.

*Mary F. Costello* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted of armed robbery and murder in the first degree by reason of deliberate premeditation, extreme atrocity or cruelty, and felony-murder. On appeal,[1] the defendant claims that (1) the motion judge erred in denying her motion to suppress various statements made to the police; (2) the trial judge erred in denying her motions for a continuance and an updated competency examination filed on the last day of trial; (3) despite her failure to object or to request more favorable instructions, the judge made errors in numerous jury instructions; and (4) trial counsel provided her ineffective assistance. The defendant also asks that we exercise our power under G. L. c. 278, § 33E, to order a new trial or to reduce her murder conviction to a lesser degree of guilt. We affirm and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* The evidence construed in the light most favorable to the Commonwealth would warrant the following. On the night of January 19, 1995, the defendant met the victim at a drinking establishment and had a few drinks with him. At some point that evening or early morning the following day, the defendant invited the victim to her apartment. The defendant stole the victim's money and slashed his throat with a knife four times. The victim died from a slash wound to his throat which severed

---

[1]The defendant was convicted and sentenced on April 3, 1996. On March 26, 1997, she filed a notice of appeal together with a motion to file notice of appeal late to which the Commonwealth had assented. This motion was improperly filed in the Superior Court. Furthermore, in allowing these motions, the judge exceeded his authority under Mass. R. A. P. 4 (c), as amended, 378 Mass. 928 (1979), in enlarging the time for filing a notice of appeal beyond sixty days. See *Commonwealth* v. *Burns*, 43 Mass. App. Ct. 263, 266 (1997), citing *Commonwealth* v. *Cowie*, 404 Mass. 119, 120 (1984). Rule 14 (b) of the Massachusetts Rules of Appellate Procedure, as amended, 378 Mass. 939 (1979), provides that only an appellate court or a single justice may extend the time for filing beyond sixty days.

In *Commonwealth* v. *White*, *ante* 258, 264 (1999), we recently concluded that "rule 14 (b) sets one year from the date of the judgment or order appealed from as the maximum enlargement of time for filing a notice of appeal that an appellate court or single justice may permit," citing *Commonwealth* v. *Simpson*, 428 Mass. 646 (1999). Under this rule we allow the motion.

his muscles, esophagus, windpipe, and nicked a cervical vertebrae. The defendant wrapped the victim's body in a blanket and dragged it to the cellar where she covered the body with a mattress and a sheet of plywood.

*The defendant's statements.* After a hearing of the defendant's motion to suppress, the motion judge found the following facts. On January 20, 1995, at approximately 3 P.M. Lieutenant John M. Souza of the Fall River police department received a telephone call from an attorney. At his request, Lieutenant Souza went to the attorney's office where he met Guy Levesque, a friend of the defendant. Levesque told Souza that, earlier that morning, he had been at the defendant's apartment and observed a rolled-up rug and what appeared to be a large amount of blood on the living room floor and wall. Levesque stated that the defendant had asked him for duct tape, explaining, "I killed him." Levesque said that he immediately left the apartment and drove to the attorney's office, where he recounted this story.

Souza, suspicious of both Levesque and the defendant, went to the defendant's apartment and knocked on her door but received no response. Souza arranged for Detective Sergeant Michael Pleiss and two other officers to secure the apartment while he returned to the police station to prepare an affidavit for a search warrant. After some delay the defendant answered the officers' knocks and let them into her apartment. The officers explained that they had reason to believe that something had happened in her apartment. She was cooperative but nervous, and did not appear to be under the influence of drugs or alcohol. She volunteered to Sergeant Pleiss that she "had a story to tell." Sergeant Pleiss showed her a consent to search form, explained it to her, filled it out, and asked her to sign it. She read the form and signed it.

Meanwhile, Souza returned to the defendant's apartment and asked the defendant whether she understood that, by signing the consent to search form, she was allowing the police to search her apartment. She acknowledged that she understood. Souza then took the defendant into the kitchen where she began to tell what had occurred the previous night.

In her first statement to Souza, the defendant claimed that she had come home with a young man that she had met at a bar the previous evening. She explained that when her friend, Levesque, found them together, he went into a jealous frenzy and attacked the victim with a knife. As the defendant was making this state-

ment to Souza, the other officers returned and informed Souza that they had found a body in the cellar. The defendant was not informed that they had discovered the victim's body.

Souza then asked the defendant to go with them to the police station so that she could make a more detailed statement. The defendant expressed concern about leaving her apartment unattended but the officers assured her that they would secure it. She asked whether she could change her clothes, and the officers agreed. While the officers were still somewhat suspicious of the defendant, the investigation was primarily focused on Levesque. The defendant accompanied the officers voluntarily and was not placed in handcuffs.

At approximately 5 P.M., Pleiss read the defendant her Miranda rights, which she acknowledged she understood, and subsequently signed the Miranda form. Pleiss told her that, although she was not a suspect, he wanted her to understand her rights because she was at the police station for questioning. Over the course of police questioning, the defendant made several contradictory statements implicating herself in the victim's death.[2]

1. *Motion to suppress.* The motion judge denied the defen-

---

[2] While at the police station, the defendant related the same story that she had previously told police officers at her apartment. At around 5:30 P.M., Sergeant Pleiss left the main squad room, where the defendant was being questioned, and a State trooper replaced Pleiss. As the defendant was being interviewed, Lieutenant Souza continued to investigate Levesque and eventually ascertained that Levesque's alibi was accurate and confirmed.

The defendant was then moved to a different room where she was questioned by the officers. She first changed her story when the officers asked her how Levesque got into her apartment. She stated that either he had a key or that she might have left the door unlocked. She then stated that Levesque was hiding in the bushes when she returned to her apartment with the victim. She said that Levesque threw the victim over a coffee table and went to the kitchen to get a knife. When the officers informed the defendant that they had confirmed Levesque's alibi, she confessed that she had made up the story as revenge.

Through a written statement, the defendant changed her story again, and claimed that another woman named "Corrine," who was at the bar that night, suggested that they rob a man who was "flashing" large sums of money. She claimed that, although she refused to take part in the robbery, Corrine persuaded her to bring the victim to her apartment. She stated that Corrine slit the victim's throat and carried his body to the cellar. After the police informed her that Corrine had an alibi, the defendant became hostile. She told yet another story in which she claimed the victim was angry because some of his money was missing and came at her with a knife. As she struggled to take the

dant's motion to suppress the statements she made at the apartment and later at the police station. He concluded that the police were not required to provide Miranda warnings while at her apartment because she was not in custody. The judge also found that, because the defendant "knowingly, voluntarily, and willingly" waived her Miranda rights at 5 P.M., her subsequent statements made four and one-half hours later should not be suppressed.

a. *Custody.* The defendant contends that her statements made at the apartment should have been suppressed because she was in custody and, therefore, should have received Miranda warnings. The defendant contends that police suspicion and conduct rendered the questioning custodial. She points to the judge's finding that she was a suspect at that time, because Levesque had implicated her and the police had observed blood on her living room floor and wall.

In reviewing the judge's decision, we "accept[] the judge's subsidiary findings of fact absent clear error, give[] substantial deference to the judge's ultimate findings and conclusions of law, but independently review[] the correctness of the judge's application of constitutional principles to facts found." *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996), quoting *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995). See *Commonwealth* v. *Mandile*, 397 Mass. 410, 412-413 (1986). "Miranda warnings are only necessary where one is subject to 'custodial interrogation.' " *Commonwealth* v. *Morse*, 427 Mass. 117, 122 (1998), quoting *Commonwealth* v. *Jung*, 420 Mass. 675, 688 (1995). A person is not in custody where a reasonable person in the defendant's situation would not consider herself in custody. *Commonwealth* v. *Cruz*, 373 Mass. 676, 682-683 (1977). "The procedural safeguards of *Miranda* [v. *Arizona*, 384 U.S. 436 (1966),] are required not where a suspect is merely in police custody, but rather where a suspect is subjected to custodial interrogation." *Commonwealth* v. *Torres*, 424 Mass. 792, 796 (1997). "Interrogation 'must reflect a measure of

---

knife from him, the victim sustained a cut throat. She stated that she carried the victim's body to the basement and called Levesque the next morning for help.

When the police subsequently arrested and booked the defendant, they found what appeared to be blood-stained money hidden in her boot. She told the officers that she wanted the ten dollars back which was hers; the rest was the money over which she and the victim had fought.

compulsion above and beyond that inherent in custody itself,' and therefore Miranda warnings are only required when 'a person in custody is subjected to either express questioning or its functional equivalent.' " *Id.* at 796-797, quoting *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980).

We conclude that the evidence amply warrants the judge's finding that the defendant was not in custody, despite police suspicion.[3] The judge found that "[t]he police were strongly suspicious of [the defendant's friend, Levesque] even before [the defendant] began her story and regarded her more as a witness than a suspect at this time." The defendant was calm, cooperative, and voluntarily admitted the police to her apartment and consented to the search. The officers never demanded that she give a statement at this time. To the contrary, the defendant volunteered to speak to Sergeant Pleiss after indicating that she had a "story to tell." Although the defendant requested permission to change her clothes before going to the police station, the judge found that she "accompanied the officers voluntarily, to further her own purposes, and without coercion or any intimidation." Therefore, the judge properly concluded that the police had no obligation to give her Miranda warnings and properly denied the motion to suppress the statement she gave at the apartment.

---

[3]In denying the defendant's motion to suppress, the judge cited *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984), for the proposition that "[a] determination of whether a person is in 'custody' is a subjective inquiry which is made by referring to objective indicia." There the court listed the following four indicia of custody:

> "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest" (citations omitted).

*Id.* at 737. The judge ruled on the defendant's motion to suppress in 1995, before this court decided *Commonwealth* v. *Morse*, 427 Mass. 117 (1998). There we noted the "dubious history" of the second *Bryant* factor and opined that "it is questionable whether the second *Bryant* factor was ever relevant to the Miranda inquiry." *Id.* at 125 n.6. Because the judge did not place undue emphasis on the second factor, we find no error in his determination that the defendant was not in custody.

b. *Fruit of the poisonous tree.* The defendant next argues that the statement she gave to Sergeant Pleiss and another officer shortly after their arrival at the police station should also have been suppressed as "fruit of the poisonous tree" notwithstanding the fact that the police gave the defendant her Miranda warnings on her arrival.

Because we conclude that the defendant's first statement was not the product of a custodial interrogation, and Miranda warnings were not required, the subsequent statements made by the defendant need not have been suppressed under the fruit of the poisonous tree doctrine. See *Commonwealth* v. *Morse, supra* at 128.

c. *General Laws c. 276, § 33A.* Additionally, the defendant challenges the admission of her statements at the police station, including her confession, on the ground that police failed to advise her of her right to make a telephone call pursuant to G. L. c. 276, § 33A.[4] This argument is unavailing as well. The record clearly shows that the defendant read and signed the Miranda rights form at 5 P.M., which contained the following statement: "You have the right to use the telephone at your expense, or if you cannot afford to, you may make a local call at Police Department expense." Moreover, suppression of evidence obtained as a result of an unintentional deprivation of a defendant's right to make a telephone call is not required. See *Commonwealth* v. *Alicea,* 428 Mass. 711, 716 (1999); *Commonwealth* v. *Johnson,* 422 Mass. 420, 429 (1996), and cases cited.

2. *The defendant's competency to stand trial.* On the third and final day of trial, defense counsel informed the judge that the previous evening while meeting with the defendant to review her testimony, the defendant informed him that she had experienced auditory hallucinations on the night of the murder. Defense counsel alleged that, as a result of this discussion, the defendant became extremely agitated, forcing him to end the meeting. Consequently, defense counsel moved for a continu-

---

[4]General Laws c. 276, § 33A, provides: "The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forthwith upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour thereafter."

ance to obtain an updated competency examination pursuant to G. L. c. 123, § 15A or § 15B. The defendant contends that the judge erred in denying her motions.

"The decision whether to grant a motion to continue lies within the sound discretion of the trial judge . . . [and a] denial of a continuance will not constitute error absent an abuse of that discretion." *Commonwealth* v. *Miles*, 420 Mass. 67, 85 (1995), and cases cited. In determining whether a trial judge has exercised this discretion at the expense of a defendant's right to effective assistance of counsel and due process of law, we must consider the circumstances of the case, and the reasons presented to the trial judge. See *id.*, and cases cited.

When faced with the issue of a defendant's competency to stand trial, a judge must decide whether the defendant has "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against [her]." *Commonwealth* v. *Hung Tan Vo*, 427 Mass. 464, 468-469 (1998), quoting *Commonwealth* v. *DeMinico*, 408 Mass. 230, 236 (1990). See *Dusky* v. *United States*, 362 U.S. 402, 402 (1960); *Commonwealth* v. *Simpson*, 428 Mass. 646, 652 (1999); *Commonwealth* v. *Vailes*, 360 Mass. 522, 524 (1971). Not every allegation of incompetency warrants a competency hearing. Rather, "[a] competency hearing must be held 'where there exists doubt as to whether the defendant satisfies the [*Dusky*] test.' " *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 266 (1995), quoting *Commonwealth* v. *Crowley*, 393 Mass. 393, 398 (1984).

Defense counsel's assertion that the defendant was extremely agitated, without more, did not require the judge to hold a full evidentiary hearing.[5] *Commonwealth* v. *Martin*, 35 Mass. App. Ct. 96, 99 (1993) ("The issue may require further inquiry, despite early findings of competence, if subsequent events or testimony raise doubt. See *Commonwealth* v. *Vailes*, 360 Mass. 522 [1971]; *Commonwealth* v. *Burkett*, 5 Mass. App. Ct. 901, 902-903 [1977]; *Commonwealth* v. *Tarrant [No. 1]*, 14 Mass. App. Ct. 1020 [1982] [defense counsel's assertion of irrationality not sufficient, without more, to require hearing] [vacated in

---

[5]At the time defense counsel moved for a continuance and renewed competency hearing, he did not say to the judge that he wanted to put the defendant on the stand, and was precluded from doing so because of her mental condition. Rather, he merely speculated that he might put the defendant on the stand if there was a question of criminal responsibility.

part on other grounds, *Tarrant* v. *Ponte,* 586 F. Supp. 1369 (D. Mass. 1984)]"). At the time of counsel's request, the judge had been able to observe the defendant throughout the trial and he knew that she had been examined one year earlier and found competent.[6,7] "[I]n reviewing the judge's determination of competency, we must give weight to the judge's opportunity to observe the defendant's demeanor during the trial . . . ." *Commonwealth* v. *Russin,* 420 Mass. 309, 317 (1995), citing *Commonwealth* v. *DeMinico, supra.* Furthermore, there is nothing in the record that supports the claim that the defendant was unable to assist in her defense nor has the defendant demonstrated that her defense was in any way impaired by her alleged incompetence. The judge did not abuse his discretion in finding that the defendant was competent, was able to understand the proceedings against her, and had the capacity to assist her attorney in her defense. There was no error.

3. *Jury instructions.* The defendant claims a number of mistakes, omissions, or misstatements in the jury charge which, she contends, individually or together, created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Niemic,* 427 Mass. 718, 720 (1998).

a. *Reasonable doubt instruction.* Relying on *Victor* v. *Nebraska,* 511 U.S. 1, 6 (1994), the defendant claims the judge's instructions permitted her conviction on proof less than proof beyond a reasonable doubt. The judge instructed the jury as follows:

---

[6]In denying the defendant's request for a continuance and competency hearing, the judge specifically noted: "She seems fine. . . . I don't see any problem. . . . She's on trial for a very serious offense, and she may very well have some emotional distress about going through this. I don't see anything in here that would rise to the level of the competency issue."

[7]While the defendant concedes that she had been examined one year earlier and had been found competent to stand trial, she asserts that "the competency report also documents her frequent suicide attempts, her hospitalizations, her reports of auditory hallucinations, and her serious, recurring emotional problems." However, the competency report concludes that: "[The defendant] does not appear to be a mentally ill person," which demonstrates that those issues had already been carefully evaluated. The fact that the defendant experienced some emotional problems does not compel the conclusion that she had become incompetent. See *Commonwealth* v. *DeMinico,* 408 Mass. 230, 234-235 (1990) (defendant competent despite expert testimony that he experienced psychotic episode during trial); *Commonwealth* v. *Kostka,* 370 Mass. 516, 522 (1976) (defendant competent despite testimony as to various points prior to contrary).

"Proof beyond a reasonable doubt does not mean proof beyond all possible doubt. But everything in the lives of human beings is open to some possible or imaginary doubt. A charge is proved beyond a reasonable doubt, if, after you have compared and considered all of the evidence you have in your minds an abiding conviction to a moral certainty that the charge is true. I have told you that every person is presumed to be innocent until she is proven guilty and that the burden of proof is on the prosecutor. If you evaluate all the evidence and you still have a reasonable doubt remaining, the defendant is entitled to the benefit of that doubt and must be acquitted.

"It is not enough for the Commonwealth to establish a probability, even a strong probability, that the defendant is more likely to be guilty than not guilty. That is not enough. Instead, the evidence must convince you of the defendant's guilt to a reasonable and moral certainty, a certainty that convinces your understanding and satisfies your reason and judgment as jurors who are sworn to act conscientiously on the evidence. This is what we mean by proof beyond a reasonable doubt."

Contrary to the defendant's assertion, the judge referred not only to a reasonable certainty, but to a "reasonable and moral certainty" which is entirely consistent with the charge in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), and endorsed in *Victor* v. *Nebraska*, *supra*. See *Commonwealth* v. *Therrien*, 428 Mass. 607, 610 (1998). Accordingly, we conclude that a reasonable juror could not have used the instruction incorrectly, see *id*. at 612, citing *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 (1996), and there was no substantial likelihood of a miscarriage of justice.

b. *Self-defense instruction*. The defendant next argues that she was entitled, as a matter of law, to a more favorable "castle" self-defense instruction, rather than the standard self-defense instruction which she received. She arrives at this conclusion by asserting that the victim "was in her dwelling illegally because without legal justification or excuse he was threatening her with a knife." General Laws c. 278, § 8A, provides:

"In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring *one who was*

*unlawfully in said dwelling*, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling." (Emphasis added.)

This statute does not apply where, as here, the victim was an invited guest and lawfully on the premises of the person charged.

c. *Deliberate premeditation instruction.* The instruction on deliberate and premeditated murder is set out below.[8] In explaining the concept of deliberation, the judge included the following statement:

"Deliberation may be a matter of days, hours or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then

---

[8]"The second element the Commonwealth must prove to you beyond a reasonable doubt is that the killing was committed with deliberate premeditation. For the Commonwealth to prove deliberate premeditation you must conclude that the defendant thought before she acted: that is, the defendant formed a plan to murder after deliberation. The element of deliberation, however, does not require an extended time span, nor does it mean that the deliberation must be accomplished slowly; rather, it refers to the purposeful character of the premeditation. In view of the speed with which the mind may act, the law does not attempt to set any limit to the time. Deliberation may be a matter of days, hours or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then the decision to kill, and lastly, the killing in furtherance of the decision. All of this may occur within a few seconds.

"However, it does not exclude action which is taken so quickly that there is no time to think about the action and then determine to do it. Although no particular length of time is required to prove deliberate premeditation, the Commonwealth must show that the defendant's resolution to kill was a product of cool reflection.

"You have heard evidence that the defendant may have voluntarily consumed an amount of alcohol at the time she allegedly performed the acts in question. You may consider the defendant's mental condition on the day in question, including any voluntary consumption of alcohol, if any, in determining whether or not the Commonwealth has proven beyond a reasonable doubt that the defendant acted with deliberate premeditation."

the decision to kill, and lastly, the killing in furtherance of the decision. All of this may occur within a few seconds. However, *it does not exclude action which is taken so quickly that there is no time to think about the action and then determine to do it*" (emphasis added).

The emphasized portion of the instruction is obviously incorrect as a matter of law. Inexplicably we have encountered the identical error in other cases. See *Commonwealth* v. *Hung Tan Vo*, 427 Mass. 464, 471-472 (1998); *Commonwealth* v. *Kosilek*, 423 Mass. 449, 453 (1996). However, here, as in *Commonwealth* v. *Kosilek, supra* at 454, "[t]he error is sandwiched between accurate statements of the law regarding premeditation and deliberation . . . [and taken] as a whole, then, the instruction did not create a substantial likelihood of a miscarriage of justice."

d. *Extreme atrocity or cruelty instruction.* The defendant claims that the judge's instructions on extreme atrocity or cruelty reduced the Commonwealth's burden of proof. She points to the judge's remarks where he states: "extreme cruelty is only a higher degree of cruelty."

As the Commonwealth argues, the judge instructed the jury according to the factors articulated in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983),[9] and concluded with the statement, "I instruct you, indifference to or pleasure in a person's pain is cruelty, and extreme cruelty is only a higher degree of cruelty."[10] In *Commonwealth* v. *Rosa*, 422 Mass. 18, 30 n.13 (1996), we concluded that there was no error in a charge identical in all material respects to the one given here. Accordingly,

---

[9]In *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983), we delineated a number of factors which a jury may consider in determining whether a murder was committed with extreme atrocity or cruelty, including: "indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, extent of physical injuries, number of blows, manner and force with which delivered, instrument employed, and disproportion between the means needed to cause death and those employed."

[10]The judge charged the jury as follows:

"As I mentioned, there is another theory of law by which the Commonwealth may prove the defendant guilty of first-degree murder, that is the theory that the defendant committed murder with extreme atrocity and/or cruelty. In order to prove the defendant guilty of first-degree murder committed with extreme atrocity or cruelty, the Commonwealth must prove these three elements beyond a reasonable doubt: Element No. 1, that the defendant committed an unlawful killing; Element No. 2, that the killing was committed with malice aforethought; Element No. 3, that the killing was committed with

there was no error.

Contrary to the defendant's contention the judge adequately instructed the jury on the significance of the defendant's voluntary consumption of alcohol. The defendant neither requested a specific instruction, nor objected to the judge's instruction. The judge instructed the jury as follows:

> "[Y]ou may consider the defendant's mental condition on the day in question, including any voluntary consumption of alcohol, if any, on all of the factors that are relevant in determining whether or not the Commonwealth has proven beyond a reasonable doubt that the defendant committed the crime with extreme atrocity and cruelty."

The judge adequately instructed the jury to consider the relationship between intoxication and the ability of the defendant to act with extreme atrocity or cruelty. See *Commonwealth* v. *Murphy*, 426 Mass. 395, 400 (1998); *Commonwealth* v. *Raymond*, 424 Mass. 382, 387-388 (1997). The judge was not required to instruct the jury that they could consider whether the defendant's alleged intoxication affected her ability "to appreciate the consequences of [her] choices." *Commonwealth* v. *Gould*, 380 Mass. 672, 686 n.16 (1980). See *Commonwealth* v. *Murphy*, *supra* ("The defendant did not request this particular language and we have never said that the *Gould* instruction must be repeated verbatim").

---

extreme atrocity or cruelty.

"And I will repeat them again. Element No. 1, that the defendant committed an unlawful killing; No. 2, that the killing was committed with malice aforethought; and 3, that the killing was committed with extreme atrocity or cruelty. The Commonwealth, again, must prove to you beyond a reasonable doubt these two elements which I have previously defined for you: that the defendant committed an unlawful killing and that the killing was committed with malice aforethought.

"The third element that the Commonwealth must prove beyond a reasonable doubt is that the killing was committed with extreme atrocity or cruelty. Extreme atrocity or cruelty means that the Commonwealth must prove that the defendant caused the person's death by a method that surpassed the cruelty inherent in any taking of a human life. In making this decision as to this element of extreme atrocity or cruelty you shall consider a number of factors. These factors include, one, whether the defendant was indifferent to or took pleasure in the victim's suffering; two, the consciousness and degree of suffering of the victim; three, the extent of the person's injuries; four, the number of blows delivered; five, the manner and force with which the blows were delivered; six, the size and nature of any weapons used; and seven, the disproportion between the means needed to cause death and those employed."

The defendant also argues that the judge erred in failing to instruct the jury that they could not consider what occurred after the victim died in deciding whether the defendant acted with extreme atrocity or cruelty. The defendant did not request this instruction. In any event, this failure could not have created a substantial likelihood of a miscarriage of justice in light of the judge's proper instruction on the *Cunneen* factors and the evidence of the four deep slashes to the victim's throat.

e. *Armed robbery instruction.* The defendant challenges the instruction on armed robbery on the ground that it materially varied from the language of the indictment. She points to the judge's charge that armed robbery required the Commonwealth to establish that the defendant took the *"money or other property* from the possession or control of the victim" (emphasis added). Contrary to the defendant's argument, this instruction did not constitute a material variance from the indictment which specifically cited G. L. c. 265, § 17, and alleged that the defendant, "did rob and steal from the person of the said [victim], *money, or the property* of the said [victim]" (emphasis added). As the Commonwealth points out, any alleged error in the instruction was harmless and did not rise to the level of a substantial likelihood of a miscarriage of justice because there was no evidence that any property other than money was taken from the victim. The jury could not have been misled by the instruction.

Last, the defendant maintains that the judge erred in failing to instruct the jury, sua sponte, that she could not be convicted if she honestly and reasonably believed that the money she took from the victim belonged to her. The defendant did not request this instruction. The instruction was not required in light of the evidence presented at trial and, therefore, the failure to give this instruction did not create a substantial likelihood of a miscarriage of justice.[11]

4. *Ineffective assistance of counsel; G. L. c. 278, § 33E.* "Appellate review of a conviction of murder in the first degree, regardless of whether a claim of ineffective assistance of counsel has been made, is governed by G. L. c. 278, § 33E. The question on appeal is whether, because of an error by defense counsel, the prosecutor, or the judge, or for any other reason,

---

[11]This instruction would have been inconsistent with her confession where she stated that she killed the victim in self-defense after he discovered that his money was missing and attacked her with a knife.

there is a substantial likelihood of a miscarriage of justice unless relief is given. The burden is on the defendant to demonstrate that something inappropriate was likely to have unfairly influenced the jury's verdict. That standard of review, including an evaluation of trial counsel's performance, is more favorable to the defendant than the ineffective assistance of counsel test set forth in *Commonwealth* v. *Saferian*, [366 Mass. 89, 96 (1974)]. See *Commonwealth* v. *Burke*, 414 Mass. 252, 256-257 (1993); *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 517 (1992); *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 & n.1 (1992)." *Commonwealth* v. *Plant*, 417 Mass. 704, 715-716 (1994).

We affirm the conviction of murder in the first degree because, applying the G. L. c. 278, § 33E, standard, we see no reason to exercise our power to reduce the verdict or to order a new trial.

*Judgments affirmed.*